RACINE UNIFIED SCHOOL DISTRICT, et al., Petitioners-Respondents and Cross-Appellants,

v.

Barbara THOMPSON, State Superintendent of Public Instruction, Respondent-Appellant and Cross-Respondent.

Court of Appeals

*No. 80–2202. Argued September 29, 1981.—Decided May 19, 1982.*
(Also reported in 321 N.W.2d 334.)

For the respondent-appellant and cross-respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Daniel D. Stier,* assistant attorney general. Oral argument by *Daniel D. Stier.*

For the petitioners-respondents and cross-appellants there was a brief by *Gilbert J. Berthelsen* and *Arthur P.*

*Simpson* of *Capwell, Berthelsen, Nolden & Casanova, Ltd.* of Racine. Oral argument by *Gilbert J. Berthelsen.*
Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   State Superintendent of Public Instruction Barbara Thompson[1] appeals from a judgment overturning her order reversing an expulsion on the ground that hearsay was inadmissible at a school board student expulsion hearing. We conclude that a student's right to due process in an expulsion hearing is satisfied even though some of the testimony presented was hearsay given by members of the school staff. For this reason, we affirm the judgment of the circuit court.

On March 3, 1980, V.O., an eleventh-grader at J.I. Case High School in Racine was requested by Assistant Principal Christiansen to consent to a locker search because a student had reported to him that his class ring had been stolen, and V.O. was the only student present when the ring disappeared. At his locker, V.O. reached inside the pocket of a jacket hanging inside and produced the ring. V.O. was then questioned by school authorities.

An expulsion hearing was set for March 13, 1980, pursuant to sec. 120.13(1)(c), Stats. The procedural mandates of the statute were apparently followed, as it is only the admission of hearsay testimony presented at the hearing to prove the ring itself was stolen or missing that is challenged on appeal. At the hearing, Mr. Johnson, the Director for Pupil Personnel, gave an outline of the events of March 3, much of which was hearsay. His outline of the events was corroborated, in large part, however, by the testimony given by Mr. Christiansen and two other staff members. Testimony was also given by the accused student and his mother. Only the student

---

[1] As of July 6, 1981, the state superintendent of public instruction is Herbert Grover.

whose ring was stolen did not testify. It is this last discrepancy that forms the crux of the issue on appeal.

The board ultimately ordered expulsion. The student appealed to the state superintendent, pursuant to sec. 120.13(1)(c), Stats., who reversed the expulsion on the ground that there was no competent evidence in the record to support the expulsion. That decision was itself appealed to the circuit court, which reversed the state superintendent, holding that the state superintendent's hearsay ruling was erroneous, primarily because a school board could not compel the attendance of witnesses. While we affirm the circuit court's judgment, we do so on due process grounds and not on the basis of the board's lack of subpoena power. We conclude that the board has subpoena power.

First, we must address the question of mootness, since the student in question has long since been reinstated and has already graduated from high school. Though, as a general rule, appellate courts will not entertain moot questions, they will do so if it is of great public importance. *State ex rel. Waldeck v. Goedken,* 84 Wis. 2d 408, 413, 267 N.W.2d 362, 363 (1978). Clearly, the questions of what measure of due process is required at an expulsion hearing and what powers of review the state superintendent has on appeal are of significant statewide importance and merit attention. We will, therefore, reach the merits of the controversy.[2]

Thompson's primary contention is that the Racine school district could not rely on hearsay evidence in an

---

[2] This court initially certified this case to the Wisconsin Supreme Court, pursuant to Rule 809.61, Stats., in the belief that this hearsay question, which is of first impression in this state, was of significant enough importance to merit their attention. The supreme court refused the certification, and we are left to make the decision.

expulsion hearing. We disagree and accordingly affirm the judgment of the circuit court.

This particular question of the use of hearsay in school expulsion hearings is of first impression in Wisconsin. Moreover, a review of other jurisdictions demonstrates that the law is unsettled.

We begin with the United States Supreme Court's discussion of due process in school disciplinary hearings from *Goss v. Lopez,* 419 U.S. 565 (1975). The *Goss* case involved a short-term suspension ordered by a school principal without a hearing, pursuant to Ohio Rev. Code Ann. § 3313.66 (1972). The Court affirmed the lower court's holding that due process had been denied the suspended students in that they had been denied a hearing.

While *Goss* is distinguishable on its facts, it is valuable in that it suggests, in *dicta,* what process is due in cases similar to the one at bar. First, the Court reiterated the principle that, as long as a property deprivation is not *de minimis,* due process, in some form, must be accorded. *Goss,* 419 U.S. at 575–76. Since the Court in *Goss* found due process to attach in a short-term suspension, there can be no question but that it attaches here, *a fortiori.* "Once it is determined that due process applies, the question remains what process is due." *Goss,* 419 U.S. at 577, quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

The Court concluded by stating:

We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident.
. . . .
We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10

days. *Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.* [Emphasis added.]

*Goss,* 419 U.S. at 583–84.

It should be clear, then, that the procedures followed in the case at bar satisfied and exceeded the process required by the United States Supreme Court for short-term suspensions. The question still remains, however, whether what was accorded was sufficiently "more formal" to suffice for a long-term expulsion.

Some further guidance may be gleaned from a later Supreme Court case, *Board of Curators v. Horowitz,* 435 U.S. 78 (1978). In discussing *Goss,* the Court emphasized due process as providing a "meaningful hedge against erroneous action." *Horowitz,* 435 U.S. at 89. But the Court found that the need for a *formal* hearing in a disciplinary action was tempered by its cost and its effectiveness as a part of the teaching process. *Id.*

Clearly, then, the process due a student in a disciplinary action is to be determined by balancing the deprivation at stake with the efficiency possible in the hearing and, we believe, the ability of the school board to implement those protective procedures.

There are a number of federal cases which have addressed the question of the admissibility of hearsay at a disciplinary hearing, but many are distinguishable on their facts, and, in any case, their holdings are mixed.[3]

---

[3] *Tasby v. Estes,* 643 F.2d 1103 (5th Cir 1981) (hearsay allowed in hearings for serious student offenses); *Boykins v. Fairfield Bd. of Educ.,* 492 F.2d 697 (5th Cir 1974), *cert. denied,* 420 U.S. 962 (1975) (hearsay allowed in suspension/expulsion hearings); *Linwood v. Bd. of Educ.,* 463 F.2d 763 (7th Cir.), *cert. denied,* 409 U.S. 1027 (1972) (hearsay allowed by implication in expulsion hearing); *Whiteside v. Kay,* 446 F. Supp. 716 (W.D. La. 1978) (hearsay allowed by implication at expulsion hearing); *Fieldler v. Bd. of Educ.,* 346 F. Supp. 722 (D. Neb. 1972) (hearsay not allowed by implication at expulsion hearing); *DeJesus v.*

This court is particularly persuaded by the rationale in favor of admitting hearsay as presented in *Boykins v. Fairfield Board of Education*, 492 F.2d 697 (5th Cir. 1974), *cert. denied*, 420 U.S. 962 (1975).[4] There, twenty-one black students were subject to disciplinary procedures as a result of a boycott of the school. Ultimately, four were readmitted immediately, eight were readmitted after a week's further suspension, one was suspended for the remainder of the semester and eight were expelled.

At the hearing, the school principal, who had investigated the charges against the students, read statements made by teachers in response to his inquiries. Appellants argued that their expulsions ought not rest upon hearsay. The fifth circuit court disagreed:

> There is a seductive quality to the argument—advanced here to justify the importation of technical rules of evidence into administrative hearings conducted by laymen—that, since a free public education is a thing of great value, comparable to that of welfare sustenance or the curtailed liberty of a parolee, the safeguards applicable to these should apply to it. . . . In this view we stand but a step away from the application of the *strictissimi juris* due process requirements of criminal trials to high school disciplinary processes. And if to high school, why not to elementary school? It will not do.
>
> . . . .
>
> Basic fairness and integrity of the fact-finding process are the guiding stars. *Important as they are, the rights at stake in a school disciplinary hearing may be fairly determined upon the "hearsay" evidence of school administrators charged with the duty of investigating the incidents. We decline to place upon a board of lay-*

*Penberthy*, 344 F. Supp. 70 (D. Conn. 1972) (hearsay not allowed in hearing for thirty-day suspension).

[4] Even though this case predates the United States Supreme Court holding in *Goss v. Lopez*, 419 U.S. 565 (1975), the hearsay principles set forth in it have been recently reaffirmed by the Fifth Circuit in *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981).

*men the duty of observing and applying the common-law rules of evidence.* [Emphasis added.]

*Boykins,* 492 F.2d at 701.

We are persuaded, finally, that the hearsay statements from schoolteachers or staff members were admissible. We agree with the fifth circuit's statement that a lay board cannot be expected to observe the niceties of the hearsay rule. Moreover, in the absence of an allegation of bias, we can conceive of no reason why school staff would fabricate or misrepresent statements of this sort. Such statements have, then, sufficient probative force upon which to base, in part, an expulsion.

There can be no question but that the state superintendent's conclusion that hearsay was impermissible was itself a conclusion of law. Questions of law are always reviewable by the court. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146 (1979). Where the material facts are not in dispute and the only question is one of law, the court may substitute its judgment for that of the agency. *Frito-Lay, Inc. v. Wisconsin Labor & Industry Review Commission,* 95 Wis. 2d 395, 400, 290 N.W.2d 551, 555 (Ct. App. 1980). This the circuit court has done, and, while this court's rationale varies from that offered by the circuit court, the end result is identical.

Appellant argues that hearsay was inadmissible as shown by cases founded in ch. 227, Stats. We find these cases to be inapposite. Section 227.01(1), Stats., defines "agency," which is the term used throughout ch. 227 to signify the applicable governmental unit, as "any board, commission, committee, department or officer *in the state government,* except the governor or any military

or judicial officer of this state." (Emphasis added.) School boards are not "boards" within the meaning of sec. 227.01(1), Stats. *State ex rel. Wasilewski v. Board of School Directors,* 14 Wis. 2d 243, 263–64, 111 N.W. 2d 198, 210 (1961), *appeal dismissed,* 370 U.S. 720 (1962). They are entities created under ch. 120, Stats.

The only applicable statute setting forth school board powers is sec. 120.13(1), Stats.[5] Particularly pertinent

---

[5] Section 120.13(1), Stats., in its entirety, reads as follows:

**120.13 School board powers.** The school board of a common or union high school district may:

(1) **School government rules; suspension; expulsion.** (a) Make rules for the organization, gradation and government of the schools of the school district, including rules pertaining to conduct and dress of pupils in order to maintain good decorum and a favorable academic atmosphere, which shall take effect when approved by a majority of the school board and filed with the school district clerk.

(b) The school district administrator or any principal or teacher designated by the school district administrator also may make rules, with the consent of the school board, and may suspend a pupil for not more than 3 school days or, if a notice of expulsion hearing has been sent under par. (c), for not more than a total of 7 consecutive school days for noncompliance with such rules or school board rules, or for knowingly conveying any threat or false information concerning an attempt or alleged attempt being made or to be made to destroy any school property by means of explosives, or for conduct by the pupil while at school or while under the supervision of a school authority which endangers the property, health or safety of others, or for conduct while not at school or while not under the supervision of a school authority which endangers the property, health or safety of others at school or under the supervision of a school authority. Prior to any suspension, the pupil shall be advised of the reason for the proposed suspension. The pupil may be suspended if it is determined that the pupil is guilty of noncompliance with such rule, or of the conduct charged, and that the pupil's suspension is reasonably justified. The parent or guardian of a suspended minor pupil shall be given prompt notice of the suspension and the reason for the suspension. The suspended pupil or the pupil's parent or guardian may, within 5 school days following the commencement of the suspension, have a conference with the school district

is subsection (c), which authorizes a school board to expel a pupil for, among other reasons, conduct which endangers the property of others. The statute then sets

administrator or his or her designee who shall be someone other than a principal, administrator or teacher in the suspended pupil's school. If the school district administrator or his or her designee finds that the pupil was suspended unfairly or unjustly, or that the suspension was inappropriate, given the nature of the alleged offense, or that the pupil suffered undue consequences or penalties as a result of the suspension, reference to the suspension on the pupil's school record shall be expunged. Such finding shall be made within 15 days of the conference. A pupil suspended under this paragraph shall not be denied the opportunity to take any quarterly, semester or grading period examinations missed during the suspension period.

(c) The school board may expel a pupil from school whenever it finds the pupil guilty of repeated refusal or neglect to obey the rules, or finds that a pupil knowingly conveyed or caused to be conveyed any threat or false information concerning an attempt or alleged attempt being made or to be made to destroy any school property by means of explosives, or finds that the pupil engaged in conduct while at school or while under the supervision of a school authority which endangered the property, health or safety of others, or finds that a pupil while not at school or while not under the supervision of a school authority engaged in conduct which endangered the property, health or safety of others at school or under the supervision of a school authority, and is satisfied that the interest of the school demands the pupil's expulsion. Prior to such expulsion, the school board shall hold a hearing. Not less than 5 days' written notice of the hearing shall be sent to the pupil and, if the pupil is a minor, to the pupil's parent or guardian, specifying the particulars of the alleged refusal, neglect or conduct, stating the time and place of the hearing and stating that the hearing may result in the pupil's expulsion. Upon request of the pupil and, if the pupil is a minor, the pupil's parent or guardian, the hearing shall be closed. The pupil and, if the pupil is a minor, the pupil's parent or guardian may be represented at the hearing by counsel. The school board shall keep written minutes of the hearing. Upon the ordering by the school board of the expulsion of a pupil, the school district clerk shall mail a copy of the order to the pupil and, if the pupil is a minor, to the pupil's parent

forth the procedural standards which the school board must follow: (1) The student is entitled to notice of a hearing; (2) The student is entitled to counsel at the hearing; (3) The hearing may be closed at the student's request; (4) The board must keep written minutes of the hearing; (5) If expulsion is ordered, such order shall be mailed to the student; and (6) An expelled student may appeal the expulsion to the state superintendent.[6] No one disputes, on this appeal, whether the statutory precepts of sec. 120.13(1) (c), Stats., were satisfactorily followed.

It is the latter portion of subsection (c) which entitles the expelled student to appeal the expulsion to the state superintendent. While our decision here is founded solely upon an error of law of the state superintendent, we point out, *obiter dicta*, that the superintendent's review of a board's expulsion hearing would appear to be limited by the statute which created that appeal, namely, sec. 120.13(1) (c), Stats. The superintendent's review, then, would be one to insure that the school board followed the procedural mandates of subsection (c) concerning notice, right to counsel, etc.

Finally, while we agree with the circuit court's determination that the superintendent erred with respect to her hearsay determination, we do not concur with the circuit court's founding of its decision upon the lack of a school board's subpoena power. We will not reverse a

---

or guardian. The expelled pupil or, if the pupil is a minor, the pupil's parent or guardian may appeal the expulsion to the state superintendent. An appeal from the decision of the state superintendent may be taken within 30 days to the circuit court of the county in which the school is located. This paragraph shall be printed in full on the face or back of the notice.

[6] Throughout this list, the statute specifies that, where the student is a minor, the parents or guardian shall be entitled to notice, option of counsel, etc.

court decision though the reason for that decision may have been erroneously or inadequately expressed. *Mueller v. Mizia*, 33 Wis. 2d 311, 318, 147 N.W.2d 269, 273 (1967).

Section 885.01(4), Stats., provides as follows:

885.01 Subpoenas, who may issue. The subpoena need not be sealed, and *may be* signed and *issued as follows:*
. . . .
(4) *By any* arbitrator, coroner, medical examiner, *board,* commission, commissioner, examiner, committee or other person *authorized to take testimony,* or by any member of a board, commission, authority or committee which is authorized to take testimony, within their jurisdictions, to require the attendance of witnesses, and their production of documentary evidence before them, respectively, in any matter, proceeding or examination authorized by law; and likewise by the secretary of revenue and by any agent of the department of agriculture, trade and consumer protection. [Emphasis added.]

We are persuaded that sec. 120.13(1)(c), Stats., authorizes a school board to take testimony in the course of an expulsion hearing. The broad language of sec. 885.01 (4), Stats., is clearly satisfied, then, by a school board conducting an expulsion hearing.

We therefore affirm the decision of the trial court reversing the order of the state superintendent because we find that the state superintendent was in error in finding hearsay inadmissible at the expulsion hearing.

*By the Court.*—Judgment affirmed.