RALPH E. SHARP, JR., Corporation Counsel Dodge County
You requested an opinion from my predecessor regarding the construction of section 48.396(1), Stats., as it pertains to the confidential exchange of information between law enforcement officers and school officials. Specifically, you ask whether a child's school can use records obtained under section 48.396(1) for any or all of the following purposes:
 1. Requiring students to participate in counseling for drug and alcohol abuse with a school counselor;
 2. Requiring students to participate in group counseling conducted within the school for drug and alcohol abuse;
 3. Referring students to county social welfare agencies for an evaluation of their use of drugs and alcohol and such counseling as may be recommended;
 4. Referring students to self-help groups which are not operated by a governmental agency;
 5. Suspending students from school for a violation of the laws prohibiting the use, possession, or distribution of intoxicants and controlled substances; and
 6. Expelling students from school for a violation of the laws prohibiting the use, possession, or distribution of intoxicants and controlled substances.
You indicate that your questions were prompted by the Mayville School District's request for the release of sheriff's department records of complaints implicating the district's students in the use, possession or distribution of intoxicants and controlled substances. *Page 135 
According to your letter, the school district has asked the sheriff's department to routinely notify the district of complaints involving students so that the district can implement a school board policy on alcohol and drug abuse.
Pursuant to that policy, a copy of which was enclosed with your opinion request, a student receives an automatic three-day suspension the first time the school district discovers the student has used, possessed or been under the influence of intoxicants, mood-altering drugs or look-alike drugs or has possessed drug-related paraphernalia. The prohibited behavior need not occur on school grounds or while school is in session; rather, the prohibition is in effect twenty-four hours a day, 365 days a year. In addition to the suspension, the student is referred to the Student Assistance Program, which can require in-school counseling or referral to alcohol and drug abuse groups. The failure to comply or cooperate with the assistance provided triggers expulsion proceedings against the student. Second and subsequent violations draw more severe penalties.
In my opinion, a school cannot use confidential information obtained from the police to require students, under threat of expulsion, to participate in group or individual counseling, nor can the school use such information to suspend or expel students. The only exception to this prohibition would be if the student has entered into an informal disposition under section 48.245, whereby he agrees to undergo counseling or to voluntarily absent himself from school for a stated period. It is also my opinion that the school can use confidential information to refer a student to county social welfare agencies or nongovernmental self-help groups, but only if the student consents to such referral.
The starting point for my analysis is section 48.396(1):
 Records. (1) Peace officers' records of children shall be kept separate from records of persons 18 or older and shall not be open to inspection or their contents disclosed except under s. 48.293, by order of the court assigned to exercise jurisdiction under this chapter or by order of the circuit court under sub. (5). This subsection shall not apply to the representatives of newspapers or other reporters of news who wish to obtain information for the purpose of reporting news without revealing the identity of the child involved or to the confidential exchange of information between the police and officials of the school attended by *Page 136 
the child or other law enforcement or social welfare agencies or to children 16 or older who are transferred to the criminal courts.
The Wisconsin Supreme Court has noted the purpose underlying this confidentiality requirement for juvenile police records:
 Confidentiality is essential to the goal of rehabilitation, which is in turn the major purpose of the separate juvenile justice system. In theory, the role of the juvenile court is not to determine guilt or to assign fault, but to diagnose the cause of the child's problems and help resolve those problems. The juvenile court operates on a "family" rather than a "due process" model. Confidentiality is promised to encourage the juvenile, parents, social workers and others to furnish information which they might not otherwise disclose in an admittedly adversary or open proceeding. Confidentiality also reduces the stigma to the youth resulting from the misdeed, an arrest record and a juvenile court adjudication.
State ex rel. Herget v. Circuit Court for Waukesha County,84 Wis.2d 435, 451, 267 N.W.2d 309 (1978) (footnotes omitted).Accord State ex rel. State Public Defender v. Percy,97 Wis.2d 627, 634-35, 294 N.W.2d 528 (Ct.App. 1980).
It is apparent from Herget that the confidentiality of juvenile police records is not intended solely to protect the juvenile from the stigma attached to having a police record or being contacted by the police. Rather, the confidentiality provision is also designed to encourage the juvenile and others having contact with him to furnish the police with information which they might otherwise not disclose. For example, parents might be willing to supply police with information about their child or their child's friends only if they knew such information would not be used by school authorities as the basis for suspension or expulsion proceedings. Likewise, a juvenile being investigated by the police for suspected alcohol or drug involvement might be more willing to cooperate if he or she knew such cooperation would not result in automatic suspension from school.
The Herget court believed that one reason the Legislature enacted a confidentiality requirement for juvenile police records was to encourage juveniles and other persons to furnish information which they might not otherwise be willing to disclose to juvenile *Page 137 
authorities. The possibility that using confidential police information to suspend or expel students or to coerce them into counseling could deter cooperation with juvenile authorities is one reason I find such usage contrary to the confidentiality requirement of section 48.396(1). A second reason is that I seriously doubt school officials can use confidential information obtained from the police to suspend or expel a student without disclosing that information to persons not entitled to receive it. (See 69 Op. Att'y Gen. 180, 182 (1980), where my predecessor expressed similar doubt.)
Under Goss v. Lopez, 419 U.S. 565 (1975), certain due process safeguards, including notice and a hearing, must be observed where sanctions such as suspension or expulsion from school are imposed. In Wisconsin such due process safeguards are codified in section 120.13(1)(b) and (c). These statutes contemplate that persons in addition to "officials of the school attended by the child" will be privy to information giving rise to a student's suspension or expulsion. For example, section 120.13(1)(b) entitles a suspended student — or his parent or guardian — to a conference with "the school district administrator or his or her designee who shall be someone other than a principal, administrator or teacher in the suspended pupil's school." Because the person conducting the conference cannot be from the suspended pupil's school, that individual is therefore outside the class of persons with whom the police can exchange confidential information under section 48.396(1).
With respect to expulsion proceedings, there is an even greater risk that persons not specified in section 48.396(1) will have access — either directly or indirectly — to confidential information contained in police files on juveniles. While your letter states that only the people described in section 118.125(2)(d)[1], the child and the child's parent or guardian can attend such proceedings, I do not believe this is always the case.
Under section 120.13(1)(c), an expulsion hearing must be closed only if the pupil and, if the pupil is a minor, his parent or guardian, request it. If a minor pupil and his parent or guardian request a *Page 138 
closed hearing, then the general public will be barred from attending. Even in a closed hearing, however, due process may require that persons other than the child, his parent or guardian and school district employes specified in section 118.125(2)(d) be present as witnesses for the board or for the pupil facing expulsion.
In Racine Unified School Dist. v. Thompson, 107 Wis.2d 657,668, 321 N.W.2d 334 (Ct.App. 1982), the court held that school boards are authorized to issue subpoenas and take testimony at expulsion hearings. This means that even in a closed hearing, witnesses subpoenaed by the school board may become privy to the police information which triggered the expulsion hearing. The same holds true for witnesses who testify without being subpoenaed.
If witnesses who testify at expulsion hearings are not "officials of the school attended by the child," their receipt of confidential police information on juveniles would run afoul of the confidentiality provision of section 48.396(1).
Moreover, if a parent — for whatever reason — does not request a closed expulsion hearing for his minor child, it appears the school board can hold an open hearing, presumably with the general public being permitted to attend. This latter situation would certainly contravene section 48.396(1) and further supports my opinion that confidential police information on juveniles cannot be used by schools to suspend, expel or coerce into counseling those students implicated in alcohol- or drug-related offenses.
Additional, albeit indirect, support for my conclusion comes from a recently enacted statute governing privileged communications between pupils and certain enumerated school employes. Section 118.126(1), which took effect in April of 1986, provides as follows:
 Privileged communications. (1) A school psychologist, counselor, social worker or nurse shall keep confidential information received from a pupil that the pupil or another pupil is using or is experiencing problems resulting from the use of alcohol or other drugs unless:
 (a) The pupil using or experiencing problems resulting from the use of alcohol or other drugs consents in writing to disclosure of the information; *Page 139 
 (b) The school psychologist, counselor, social worker or nurse has reason to believe that there is serious and imminent danger to the health, safety or life of any person and that disclosure of the information to another person will alleviate the serious and imminent danger. No more information than is required to alleviate the serious and imminent danger may be disclosed; or
 (c) The information is required to be reported under s. 48.981.
In most cases, this statute would prevent school psychologists, counselors, social workers or nurses from divulging to school officials information received from a pupil regarding drug or alcohol use by him or another pupil. Thus, such information could rarely, if ever, be used as a basis for suspension or expulsion proceedings against a pupil. In my opinion, it would therefore be anomalous to permit school officials to use confidential police information regarding juvenile alcohol or drug usage to suspend or expel pupils, particularly since such information may have been obtained from persons to whom the privilege contained in section 118.126(1) applies.
As a final matter, I believe it is necessary to correct an erroneous impression created by an earlier opinion of this office. Specifically, in 69 Op. Att'y Gen. 180 (1980), to which you alluded in your letter, my predecessor implied that confidential information imparted to school officials by the police becomes part of a pupil's records under section 118.125. My reading of section 118.125(1)(d) is to the contrary. That subsection, which defines "pupil records," explicitly excludes from the definition
 notes or records maintained for personal use by a teacher or other person who is required by the department under s. 115.28(7) to hold a certificate, license or permit if such records and notes are not available to others nor does it include records necessary for, and available only to persons involved in, the psychological treatment of a pupil.
In my opinion, confidential information obtained from juvenile authorities would not fall within the definition of "pupil records" contained in section 118.125(1)(d). Language to the contrary in 69 Op. Att'y Gen. 180 (1980) is hereby withdrawn.
In closing, I want to stress that this opinion in no way implies that school officials are powerless to discipline students who engage in drug or alcohol use, whether such conduct occurs on or off *Page 140 
school grounds.[2] Rather, this opinion merely concludes that confidential information about juvenile drug or alcohol use, which is obtained from law enforcement authorities, cannot be used to suspend or expel students or to force them to undergo counseling. Such information may be used, however, in less serious types of disciplinary actions where confidentiality can be assured. It can also be used to refer a student to county welfare agencies or to nongovernmental self-help groups, if the student consents to such referral.
I recognize that the conclusions reached in this opinion may frustrate educators who believe they should be able to use the information contained in juvenile police records to enforce school codes of behavior. However, authority for such usage would have to come from the Legislature, whose enactment of section48.396(1) accorded confidential status to police records on juveniles.
DJH:MMM
[1] That section provides as follows:
 (d) Pupil records may be made available to persons employed by the school district which the pupil attends who are required by the department under s. 115.28(7) to hold a certificate, license or permit and other school district officials who have been determined by the school board to have legitimate educational interests.
[2] The extent to which schools can discipline pupils for conduct occurring away from school grounds is unresolved. See, e.g., Annot., 53 A.L.R.3d 1124 (1973). *Page 141