MADISON METROPOLITAN SCHOOL DISTRICT, Petitioner-
Respondent,

v.

Wisconsin DEPARTMENT OF PUBLIC INSTRUCTION, Lee
Sherman Dreyfus, Interim State Superintendent of
Public Instruction, Respondents-Appellants.

Court of Appeals

*No. 94–0199. Submitted on briefs October 6, 1994.—Decided
December 28, 1995.*

(Also reported in 543 N.W.2d 843.)

1

For the respondents-appellants the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Warren D. Weinstein*, assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Jill Weber Dean* and *Frank C. Sutherland* of *Lathrop & Clark* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.  Madison Metropolitan School District suspended and later expelled a Madison middle school pupil. The state superintendent of public instruction reversed the expulsion decision, and the circuit court reversed the state superintendent's decision. The department of public instruction and the state superintendent appeal from the circuit court's order.

The issues are whether (1) the state superintendent exceeded his authority when he ruled that the district failed to comply with the time limit on a suspension under § 120.13(1)(b), STATS., the controlling statute; (2) the state superintendent lacked authority to review a "home study agreement" in an expulsion proceeding; and (3) the student on homebound study was suspended within the meaning of § 120.13(1)(b). We hold that the state superintendent lacked authority to review the suspension. We affirm the judgment.

5

## I. FACTS

On December 4, 1992, a seventh grade pupil brought an unloaded BB pistol to his Madison middle school. An assistant school principal suspended the pupil for three days for bringing the gun to school.

On December 9, 1992, the pupil and his parents met with principal Dr. Marvin Meissen and assistant superintendent of secondary education Dr. Shirley Baum. The pupil's mother signed an offer of homebound studies agreement.[1] The agreement provided that the pupil would receive homebound instruction from December 9, 1992, to January 15, 1993.[2] The homebound instruction program provides a pupil with "one-on-one" educational services from a teacher outside the school for at least two hours a day, five days a week. Dr. Baum stated on the form that she recommended homebound instruction because of expulsion.

The district considers the homebound studies agreement as part of a larger agreement concerning the expulsion. It contends that the meeting produced an "oral agreement" on a disposition which included

---

[1] The homebound study program is statutory. Section 118.15(1)(d), STATS.

> Any child's parent or guardian, or the child if the parent or guardian is notified, may request the school board, in writing, to provide the child with program or curriculum modifications, including but not limited to:
>
> . . . .
>
> 5. Homebound study, including nonsectarian correspondence courses or other courses of study approved by the school board or nonsectarian tutoring provided by the school in which the child is enrolled.

[2] The homebound instruction continued after January 15, 1993, until the student's expulsion two months later.

expulsion for a limited period combined with homebound instruction prior to the expulsion.

On December 11, 1992, Dr. Meissen wrote to the pupil and his parents, stating that the letter "confirms the decision to expel you" and invoking the school policy that required him to recommend that action. He enclosed a copy of the three-day suspension form that had been signed on December 4.

The parents obtained counsel who requested a meeting with Dr. Baum. At the meeting on January 20, 1993, the district refused to consider placement in homebound instruction as a sufficient disposition in lieu of expulsion. The same day the district issued notices of expulsion to the pupil and his family, setting a hearing date for January 26. The parties agreed to postpone the hearing until February 4. At the hearing, Dr. Baum recommended that the student receive a nine-week period of no services.

On February 22, 1993, a hearing officer recommended expulsion and ordered the homebound instruction continued until the district school board acted on his decision. On March 15 the school board approved an amended version of the order. The board directed that expulsion begin immediately and continue to the end of the second semester of the 1992-93 school year but that the district offer an alternative Madison School District program on April 19, 1993, until the end of the semester.

The pupil appealed his expulsion to the state superintendent. On May 17, 1993, the superintendent, in the person of the deputy superintendent, found that the pupil had not been permitted to return to school after the fifteen-day suspension authorized in § 120.13(1)(b), STATS., had expired and that the suspension continued, notwithstanding the homebound study

agreement. The state superintendent concluded that the school board had failed to comply with all of the procedural requirements of § 120.13(1)(b), the suspension subsection, and § 120.13(1)(c), an expulsion statute. He reversed the expulsion.

The circuit court held that the state superintendent has no authority to review procedural errors concerning suspensions under § 120.13(1)(b), STATS., and a procedural error under that subsection did not invalidate the expulsion.

Other facts will be stated in our opinion.

## II. SCOPE OF APPELLATE REVIEW

██

We review the department's decision, not that of the trial court, *WSEU v. Wisconsin Employment Rel. Comm'n*, 189 Wis. 2d 406, 410, 525 N.W.2d 783, 785 (Ct. App. 1994), but our review is identical to that of the circuit court. *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 405-06, 291 N.W.2d 850, 855 (1980). We must set aside or modify the superintendent's decision if we find he erroneously interpreted a provision of law. Section 227.57(5), STATS.

██

Like the heads of all administrative agencies, the state superintendent possesses only such power as is expressly conferred or necessarily implied from the statutes under which he operates. *Grogan v. Public Service Comm'n*, 109 Wis. 2d 75, 77, 325 N.W.2d 82, 83 (Ct. App. 1982). The extent of that authority is a question of law. *Wisconsin Power & Light v. PSC*, 181 Wis. 2d 385, 392, 511 N.W.2d 291, 293 (1994). We owe no deference to an agency's determination concerning its own statutory authority. *Id.*

8

## III. STATUTES INVOLVED

The pertinent statutes are § 120.13(1)(b) and (c) and (e), STATS. The relevant parts of those statutes are as follows:

The pupil suspension subsection, § 120.13(1)(b), STATS., provides

The school district administrator or any principal or teacher designated by the school district administrator also may . . . suspend a pupil for not more than 3 school days or, if a notice of expulsion hearing has been sent under par. (c) or (e) . . ., for not more than a total of 15 consecutive school days for noncompliance with . . . school board rules, or . . . for conduct by the pupil while at school . . . which endangers the property, health or safety of others . . . .

One pupil expulsion subsection, § 120.13(1)(c), STATS., provides

The school board may expel a pupil from school whenever it finds the pupil guilty of repeated refusal or neglect to obey the rules, . . . or finds that the pupil engaged in conduct while at school . . . which endangered the property, health or safety of others . . . and is satisfied that the interest of the school demands the pupil's expulsion. Prior to such expulsion, the school board shall hold a hearing. . . . The expelled pupil or, if the pupil is a minor, the pupil's parent or guardian may appeal the expulsion to the state superintendent. . . . [T]he state superintendent shall review the decision and shall, upon review, approve, reverse or modify the decision. The decision of the school board shall be enforced while the state superintendent reviews the decision. An appeal from the decision of the state superintendent may be taken within 30 days to the

9

circuit court of the county in which the school is located.

An alternative expulsion subsection, § 120.13(1)(e)1.b, STATS., provides that a school board may adopt a resolution authorizing an independent hearing officer appointed by the board to determine expulsions. Section 120.13(1)(e)2 provides that

> the independent hearing officer . . . may expel a pupil from school whenever the hearing officer . . . finds that the pupil engaged in conduct that constitutes grounds for expulsion under par. (c). . . . Within 30 days after the date on which the order is issued, the school board shall review the expulsion order and shall, upon review, approve, reverse or modify the order. The order of the hearing officer . . . shall be enforced while the school board reviews the order. The expelled pupil or, if the pupil is a minor, the pupil's parent or guardian may appeal the school board's decision to the state superintendent. . . . [T]he state superintendent shall review the decision and shall, upon review, approve, reverse or modify the decision. The decision of the school board shall be enforced while the state superintendent reviews the decision. An appeal from the decision of the state superintendent may be taken within 30 days to the circuit court of the county in which the school is located.

## IV. SUPERINTENDENT'S AUTHORITY TO REVIEW SUSPENSION ERRORS IN AN EXPULSION [3]

[3] The parties unaccountably discuss this appeal in terms of a sub. (1)(c) expulsion. The appeal involves a sub. (1)(e) expulsion. It was noticed as such to the pupil and his parent, and tried as such by an independent hearing officer appointed as

It is beyond dispute that a pupil or his or her parents or guardian has no right of appeal to the state superintendent because of error in a suspension proceeding under sub. (1)(b). Nor does that provision expressly confer on the state superintendent the power to review a suspension. Subsection (1)(b) contains no reference whatever to an appeal under any circumstances to the state superintendent or review by that officer.

It is also beyond dispute that sub. (1)(c) and (e) confer on a pupil or his or her parents or guardian an unqualified right to appeal an expulsion decision to the state superintendent and direct him to review it. Nothing in sub. (1)(c) and (e) expressly authorizes the superintendent to review a challenged suspension when the superintendent reviews an expulsion decision.

In the absence of an express authorization to the state superintendent in an expulsion appeal to review a suspension, the question is whether the legislature impliedly granted him that power.

However, if the school district did not err when it prevented the pupil's return to school after fifteen days from the notice of expulsion, we need not decide whether the state superintendent has the power to

provided in sub. (1)(e)1.b. The officer prepared findings, conclusions and a proposed expulsion order which the school board reviewed and modified, all as provided in sub. (1)(e)2. A transcript of the hearing record was prepared and furnished to the pupil's parent, as provided in sub. (1)(e)2. The expulsion order was based on conduct which constitutes grounds for expulsion under sub. (1)(c), as required under sub. (1)(e)2, but that did not convert this into a sub. (1)(c) expulsion. The error confuses the discussion but does not affect our disposition.

11

review the suspension. If the school district did not err, the state superintendent based his order reversing the school district's expulsion decision on a false premise, and his order must be reversed for that reason alone.

■

We conclude that a school district errs when it fails to permit a pupil to return after a fifteen-day suspension expires. The only reasonable reading of sub. (1)(b) is that if a pupil is given a notice of expulsion hearing under sub. (1)(c) or (e), then the maximum permissible suspension is "a total of fifteen consecutive school days."[4] The purpose of the fifteen-day maximum suspension must be to give the district time to hold the hearing and decide whether to expel the student. If expulsion does not result within the fifteen-day period, the suspension ends and the pupil may return to school. If expulsion is ordered after a fifteen-day suspension ends and the pupil has returned to school, the pupil is expelled from and after the date of the expulsion order.

■

The school district argues that the pupil's mother, by signing the offer of homebound study agreement, waived or extended the fifteen-day suspension. The state superintendent concludes that neither waiver nor extension occurred. Waiver and extension raise questions of mixed fact and law. *Reckner v. Reckner*, 105 Wis. 2d 425, 435, 314 N.W.2d 159, 164 (Ct. App. 1981).

---

[4] The legislature has given considerable attention to the maximum suspension and has repeatedly lengthened it. In 1973 it expanded the maximum time of suspension from three to seven days. Laws of 1973, Chapter 94, § 3. In 1989 it expanded the maximum time from seven to ten days. 1989 Wis. Act 31, § 2317b. In 1992 it expanded the time from ten to fifteen days. 1991 Wis. Act 269, § 650q.

Because the state superintendent may not review a sub. (1)(b) suspension, his conclusions and the factual findings on which they are based are nullities. For that reason, we leave the waiver and extension issues without further discussion.

We turn to whether the legislature impliedly granted the state superintendent power to review a sub. (1)(b) suspension in an appeal from an expulsion decision under sub. (1)(c) or (e). We conclude it did not.

Administrative powers are not freely and readily implied. Any reasonable doubt as to the existence of an implied power in an agency should be resolved against it. *Kimberly-Clark Corp. v. Public Service Comm'n*, 110 Wis. 2d 455, 462, 329 N.W.2d 143, 146 (1983). Whether a power is to be implied turns on the intent of the legislature. *Id.* Intent to confer such power may be inferred when the power rises from fair implication from expressed powers, *Wisconsin Environmental Decade, Inc. v. PSC*, 69 Wis. 2d 1, 16, 230 N.W.2d 243, 251 (1975), or if the power is necessarily implied by the statutes under which an agency operates. *Kimberly-Clark Corp.*, 110 Wis. 2d at 461-62, 329 N.W.2d at 146; *Racine Fire & Police Comm. v. Stanfield*, 70 Wis. 2d 395, 399, 234 N.W.2d 307, 309 (1975).

The power to review a suspension decision in an expulsion appeal cannot be fairly implied from sub. (1)(c) or (e), and we do not understand the state superintendent to argue otherwise. The state superintendent asserts, however, that he must, of necessity, hold authority to invalidate an expulsion preceded by an invalid suspension. He asserts that otherwise a school district could violate sub. (1)(b) with

impunity, even though it intends to pursue an expulsion. The district could suspend a student for as many days as the district desires, and no need would exist for the fifteen-day suspension limit when notice of an expulsion hearing has been given. This, we are told, leads to an absurd result, and, of course, absurd results are to be avoided when interpreting a statute. *DeMars v. Lapour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985).

We acknowledge the force of the state superintendent's contention that his inability to review a faulty suspension order, when reviewing an expulsion order, allows a district to violate sub. (1)(b) with impunity, so far as review by the state superintendent is concerned. But it does not follow that the state superintendent must, of necessity, be able to review suspension in an expulsion appeal.

The inability of the state superintendent to review a suspension is not critical to a state superintendent's power to review an expulsion under sub. (1)(c) or (e). The state superintendent can review an expulsion, regardless whether suspension was improperly imposed. Nothing in the suspension provision, sub. (1)(b), even suggests that the superintendent must be able to review a suspension.

Suspension is a local matter. It occurs at a level different from that at which the state superintendent operates. In 1973, when the statute relating to suspension and expulsion was amended, the legislature described the purpose of suspension as follows:

> The legislature finds that suspension of a pupil from school is for the purpose of bringing the pupil, his parent or guardian, teachers, counselors and

14

school officials together to discuss and resolve the pupil's academic and disciplinary problems.

Laws of 1973, Chapter 94, § 1 (second sentence). Expulsion is reviewable at the state superintendent's level, but review of a suspension at that level is not necessary to accomplish the legislature's purpose behind suspension. Moreover, suspension is a less serious interruption of the student's attendance, because no suspension can exceed fifteen consecutive school days.

It may be that if a suspended student is not allowed to re-enter school following a fifteen-day suspension, in the absence of other circumstances, the suspension is tantamount to expulsion. If so, a school district may cause a de facto expulsion by unlawfully extending a suspension. We see little difference between a suspension and expulsion in § 120.13(1), STATS., except the duration of the time the student is not permitted to re-enter school. However, the reviewability of a de facto expulsion by the state superintendent or by the courts is not argued, and we do not reach it.

Moreover, we cannot overlook our admitted dicta in a 1982 decision. We said,

> [W]e point out, *obiter dicta*, that the superintendent's review of a board's expulsion hearing would appear to be limited by the statute which created that appeal, namely sec. 120.13(1)(c), Stats. The superintendent's review, then, would be one to insure that the school board followed the procedural mandates of subsection (c) concerning notice, right to counsel, etc.

*Racine Unified School Dist. v. Thompson*, 107 Wis. 2d 657, 667, 321 N.W.2d 334, 339 (Ct. App. 1982). In 1982 sub. (1)(e) did not exist, but what we said regarding

sub. (1)(c) applies as well to sub. (1)(e) for purposes of determining the implied powers of the state superintendent over sub. (1)(b) suspensions. *Racine* did not involve the superintendent's power in an expulsion appeal to invalidate a preceding suspension, but the breadth of our dicta makes it arguably applicable to such a case.

Because the state superintendent has applied our *Racine* dicta, and its applicability to sub. (1)(b) has survived legislative activity regarding § 120.13(1), STATS., we conclude that we should give considerable weight to our dicta on the issue before us. *See Beloit Corp. v. DILHR*, 63 Wis. 2d 23, 31-32, 216 N.W.2d 233, 238 (1974) (reliance by legal profession on case given publicity indicates legislature probably acquiesced in dicta).

On several occasions the state superintendent has cited our *Racine* dicta for the proposition that the scope of the state superintendent's review is limited to § 120.13(1)(c), STATS., and impliedly sub. (1)(e).[5] And

---

[5] *In the Matter of Expulsion of Nancy Z.*, Decision and Order No. 139, 86-EX-05 (May 23, 1986); *In the Matter of Expulsion of Jessie K.*, Decision and Order No. 131, 85-EX-03 (June 17, 1985); *In the Matter of Expulsion of Joshua K.*, Decision and Order No. 216, 93-EX-14 (January 31, 1994); *In the Matter of Expulsion of Bradley B.*, Decision and Order No. 107 (February 15, 1983); *In the Matter of Expulsion of Raymond M.*, Decision and Order No. 110 (February 27, 1983); *In the Matter of Expulsion of Jolene M.*, Decision and Order No. 112 (May 9, 1983); *In the Matter of Expulsion of Michaelene J.*, Decision and Order No. 161, 89-EX-02 (May 19, 1989); *In the Matter of Expulsion of Brandon H.D.*, Decision and Order No. 206, 93-EX-03 (May 3, 1993); *In the Matter of Expulsion of John R.*, Decision and Order No. 117 (February 9, 1994); *In the Matter of Expulsion of Michael C.G.*, Decision and Order, 93-EX-16 (February 11,

we conclude from that frequency that our *Racine* dicta is embedded in Wisconsin school law with respect to the issue before us.

Finally, some five years after we announced our *Racine* dicta, the legislature considered the power of the state superintendent to review an expulsion order. It amended sub. (1)(c) to provide that the superintendent has the authority to "review, approve, reverse or modify" a school board's expulsion decision and created sub. (1)(e) with the same language. 1987 Wis. Act 88, §§ 3 and 4. Prior to the amendment, the statute did not specify the duties of the state superintendent in an expulsion appeal. *Id.* This is no occasion for us to construe the meaning of the language "review, approve, reverse or modify." The 1987 legislation shows, however, that notwithstanding the attention it has given to the powers of the state superintendent to review an expulsion decision under sub. (1)(c) and (e), the legislature has not expanded the state superintendent's authority to include review of a suspension order under sub. (1)(b), in an expulsion appeal or otherwise.

Because we conclude that the state superintendent lacks authority to review a suspension order in an appeal from an expulsion order under § 120.13(1)(e), STATS., we hold that the circuit court properly reversed the state superintendent's decision. We affirm the order of the circuit court.

We do so without discussing the due process issues raised in the concurring opinion. No due process issue regarding § 120.13(1)(b), STATS., was raised or discussed by the parties.

---

1994); *In the Matter of Expulsion of Brad S.*, Decision and Order No. 221, 94-EX-02 (March 7, 1994). In *Nancy Z., Jessie K.* and *Joshua K.*, the state superintendent held he lacked the power to review a sub. (1)(b) suspension in an expulsion appeal.

17

*By the Court.*—Order affirmed.

SUNDBY, J. (*concurring*). I concur in the majority's conclusion that the state superintendent of public instruction erred in reversing the expulsion of Lenny R. by the Madison Metropolitan School District Board of Education. I believe it should be explained that the fifteen-day suspension under § 120.13(1)(b), STATS., is a disciplinary action and does not establish a time within which the board must act on a proposed expulsion.

At its March 15, 1993 meeting, the board of education adopted the examiner's decision[1] expelling Lenny "through April 23, 1993." However, the board amended the examiner's decision to provide that Lenny was expelled upon entry of the board's order to the end of the second semester of the 1992-93 school year, but that beginning April 19, 1993, the district would offer "homebound" instruction to Lenny until the end of the semester. The state superintendent reversed the expulsion because he concluded the board lost competency to hear the charges against Lenny because it did not complete the expulsion process within fifteen days after notice of the charges and hearing was served. The superintendent also concluded that the board erred in using the homebound program as a disciplinary tool. I conclude that the superintendent's decision in this respect is moot.

The superintendent reads § 120.13(1)(b), STATS., to require the school board to act on a notice of expulsion

---

[1] The school board adopted the alternative expulsion procedure under § 120.13(1)(e)2, STATS., pursuant to which an independent hearing officer may expel a pupil after hearing, subject to review by the school board, appeal to the state superintendent, and judicial review.

within fifteen days after the five-day notice of the proposed expulsion is given the child and the child's parents or guardian. In other words, the fifteen-day notice is an integral part of the expulsion proceedings and if the board does not act within that time, it loses jurisdiction or competency to expel the student. I disagree. I conclude that the fifteen-day period of suspension is disciplinary and is subject to the due process requirements of sub. (1)(b) and is not part of the due process procedures to hear expulsion charges.

Section 120.13(1)(b), STATS., provides in part:

> The school district administrator or any principal . . . may suspend a pupil for not more than 3 school days or, *if a notice of expulsion hearing has been sent under par. (c) or (e)* . . . for not more than a total of 15 consecutive school days for noncompliance with . . . school board rules . . . .

(Emphasis added.)

The school district administrator or his or her designee may suspend a pupil without review or approval by the school board. No hearing is required but, "[p]rior to any suspension, the pupil shall be advised of the reason for the proposed suspension." *Id.* I strongly suspect that the drafters of § 120.13(1)(b), STATS., had read *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985), where the Court held that a conference with a school teacher prior to discharge satisfied the requirements of procedural due process, provided the teacher had notice and an opportunity to be heard within a reasonable time after his or her discharge or suspension. Section 120.13(1)(b) further provides that the suspended pupil or the pupil's parent or guardian may, within five school days following the commencement of the suspension, request a conference with the school district administrator or his or her designee who shall

be someone other than an official in the pupil's school. The school district administrator or his or her designee may make a finding within fifteen days of the conference that the suspension was unjustified, whereupon reference to the suspension in the pupil's school records "shall be expunged." *Id.* Whether these latter procedures satisfy procedural due process is not an issue in this case.

Although the fifteen-day period of suspension is triggered by notice of proposed expulsion, that notice has nothing to do with the expulsion proceedings. Section 120.13(1)(e)2, STATS., provides in part: "[T]he independent hearing officer or independent hearing panel . . . may expel a pupil from school whenever the hearing officer or panel finds that the pupil engaged in conduct that constitutes grounds for expulsion under par. (c)." The district must give five days' notice of the charges against the pupil and the time and place of the hearing. Subdivision 2 does not require that the hearing on the charges be held within any particular time, although due process requires that any disciplinary charges be heard within a reasonable time. The statute does not mention the fifteen-day suspension.

I agree with the state superintendent that § 120.13(1)(b), STATS., does not permit the school district administrator or his or her designee to suspend a pupil for more than fifteen consecutive school days. However, it is not up to the state superintendent to correct the administrator's or designee's error. That is up to the courts.

There is nothing in the statute which permits the state superintendent to review the school board's fifteen-day suspension under § 120.13(1)(b), STATS. Lenny was not denied procedural due process by the procedures prescribed in § 120.13(1)(e)2. He and his

parents got notice of the proposed grounds for expulsion, got written notice of the hearing, were heard by the hearing officer, got notice of the reasons for his expulsion, got review by the school board of his expulsion and appeals to the state superintendent and the circuit court. I do not see how failure of the school board to hold the expulsion hearing within fifteen days of the expulsion notice violated Lenny's procedural due process rights or failed to follow the statutory procedure.

While I agree with the state superintendent's conclusion that homebound instruction may not be imposed as discipline, I find nothing in the applicable statutes to preclude a district from suspending a pupil and then providing homebound instruction to that pupil so that his or her educational needs continue to be met when it is necessary to remove a pupil from the general population for whatever reason. However, I do not believe that issue is involved in this case because the state superintendent has no statutory authority to interfere with the local school district's decision as to when to use the homebound instruction program.

For these reasons, I concur in our decision affirming the decision of the circuit court reversing the state superintendent's action. However, I do not join the majority's opinion.[2]

_____

[2] The majority would not reach the "issue" I advance to support the trial court's decision, on the grounds that this "issue" has not been raised. The difference between an "argument" and an "issue" is not often appreciated. *See State v. Weber*, 164 Wis. 2d 788, 789 & n.2, 476 N.W.2d 867, 868 (1991). "Once a case is before the court, the court may, within its discretion, 'review any substantial and compelling issue which the case presents.' " *Id.* at 795 n.6, 476 N.W.2d at 870 (Abrahamson, J., dissenting) (quoting *Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 32, 435 N.W.2d 234, 238 (1989)). If we do not

retain our independence to decide cases based on the law, we become arbitrators, not judges. The issue of the nature of the fifteen-day suspension is, in my opinion, a far more compelling issue than that decided by the majority. I believe we should follow our customary practice when a dispositive argument has not been noted by the parties; we should request supplemental briefs.

This appeal illustrates the value of a separate opinion in an intermediate appellate court. This case is likely to reach the Wisconsin Supreme Court and the court should have the benefit of a concurring judge's view of the law. The Chicago Council of Lawyers recently evaluated the United States Court of Appeals for the Seventh Circuit. *See* Chicago Council of Lawyers, *Evaluation of the United States Court of Appeals for the Seventh Circuit* (1994). The Council stated: "The Council believes . . . that separate opinions serve a real purpose." *Id.* at 11. The most persistent criticism of the Seventh Circuit judges was that they did not write separately enough. When addressing the Supreme Court Historical Society June 13, 1994, Justice Scalia stated: "A second external consequence of a concurring or dissenting opinion is that it can help to change the law. That effect is most common in the decisions of intermediate appellate tribunals." *Justice Scalia Delivers Nineteenth Annual Lecture: Discusses Dissenting and Concurring Opinions in Court History*, THE SUPREME COURT HISTORICAL SOCIETY QUARTERLY, vol. XV, at 19. The Council observed that: "There is relatively little scholarly literature on the virtues and vices of separate opinions, and most of it focuses on the U.S. Supreme Court." Chicago Council of Lawyers at 11 n.11. I have recently completed a survey of the chief judges of all state intermediate appellate courts to provide such literature.