Michael E. McMorrow, Petitioner-Respondent,

v.

State Superintendent of Public Instruction, John T. Benson, Respondent-Appellant.

Court of Appeals

*No. 99–1288. Submitted on briefs June 5, 2000.—Decided July 25, 2000.*

2000 WI App 173

(Also reported in 617 N.W.2d 247.)

330

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Stephen J. Nicks*, assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Michael E. McMorrow* of Mequon.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. The State appeals from a circuit court order reversing the decision of the State Superintendent of Public Instruction (SSPI) which, in turn, affirmed the Whitefish Bay School District's decision denying Jordan McMorrow's application for enrollment at Whitefish Bay High School under the "open enrollment" law contained in WIS. STAT. § 118.51 (1997–98).[1] The State contends that the circuit court erred when it reversed the District's decision denying McMorrow's application for enrollment. The State argues that the District's decision was supported by substantial credible evidence and, therefore, the circuit court should have affirmed the District's decision. Because the District's decision was arbitrary and capricious, we affirm the circuit court's order.[2]

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] McMorrow argues in his response brief that the SSPI exceeded its authority when it, relying on WIS. ADMIN. CODE § PI 36.10(3)(c)(3), affirmed the school district's decision for other reasons. However, because we have resolved the appeal in favor of affirming the circuit court's decision, we need not reach this additional argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

# I. BACKGROUND

¶ 2. This case involves the newly enacted "open enrollment" law codified in WIS. STAT. § 118.51.[3] The

---

[3] WIS. STAT. § 118.51 provides in pertinent part:

**Full-time open enrollment.**

. . . .

(2) APPLICABILITY. Beginning in the 1998–99 school year, a pupil may attend a public school, including a prekindergarten, early childhood or school-operated day care program, in a nonresident school district under this section, except that a pupil may attend a prekindergarten, early childhood or school-operated day care program in a nonresident school district only if the pupil's resident school district offers the same type of program that the pupil wishes to attend and the pupil is eligible to attend that program in his or her resident school district.

(3) APPLICATION PROCEDURES. (a) *Submission and acceptance or rejection.* 1. The parent of a pupil who wishes to attend a public school in a nonresident school district under this section shall submit an application, on a form provided by the department under sub. (15) (a), to the school board of the nonresident school district that the pupil wishes to attend, not earlier than the first Monday in February and not later than the 3rd Friday in February of the school year immediately preceding the school year in which the pupil wishes to attend. On the 4th Monday in February, the nonresident school board shall send a copy of the application to the pupil's resident school board and the department. The application may include a request to attend a specific school or program offered by the nonresident school district.

2. A nonresident school board may not act on any application received under subd. 1. until after the 3rd Friday in February. If a nonresident school board receives more applications for a particular grade or program than there are spaces available in the grade or program, the nonresident school board shall determine which pupils to accept on a random basis.

3. On or before the first Friday following the first Monday in April following receipt of the application, the nonresident school board shall notify the applicant, in writing, whether it has accepted the application. If the nonresident school board rejects an application, it shall include in the notice the reason for the rejection.

4. On or before the first Friday following the first Monday in April following receipt of a copy of the application, if a resident

school board denies a pupil's enrollment in a nonresident school district under sub. (6), (7) or (12) (b) 1., the resident school board shall notify the applicant and the nonresident school board, in writing, that the application has been denied and include in the notice the reason for the denial.

5. If an application is accepted, on or before the 2nd Friday following the first Monday in May following receipt of the application, the nonresident school board shall notify the applicant, in writing, of the specific school or program that the pupil may attend in the following school year.

6. If an application is accepted, on or before the first Friday following the first Monday in June following receipt of a notice of acceptance, the pupil's parent shall notify the nonresident school board of the pupil's intent to attend school in that school district in the following school year.

(b) *Notice to resident school district.* Annually by June 30, each nonresident school board that has accepted a pupil under this section for attendance in the following school year shall report the name of the pupil to the pupil's resident school board.

(c) *Subsequent reapplication; when required.* 1. If a pupil's parent notifies a nonresident school board, under par. (a) 6., that the pupil intends to attend school in that school district in the following school year, the pupil may attend that school district in the following school year and may continue to attend that school district in succeeding school years without reapplying, except that the nonresident school board may require that the pupil reapply, no more than once, when the pupil enters middle school, junior high school or high school.

2. If at any time a pupil who is attending school in a nonresident school district under this section wishes to attend school in a different nonresident school district under this section, the pupil's parent shall follow the application procedures under par. (a).

(4) ˙ ADOPTION OF POLICIES AND CRITERIA. (a) By February 1, 1998, each school board shall adopt a resolution specifying all of the following:

1. Its reapplication requirements, if any, under sub. (3) (c) 1.

2. Its acceptance and rejection criteria under sub. (5) (a) and (b).

3. A statement of the preference required under sub. (5) (c).

4. Its transfer limitations, if any, under sub. (6).

5. If the school district is eligible for aid under subch. VI of ch. 121, the limitation on transfers into or out of the school district imposed by the school board under sub. (7).

6. Whether it will provide transportation under s. 121.54 (10) for some or all of the pupils who reside in the school district and attend school in a nonresident school district under this section or for some or all of the pupils who reside in other school districts and attend its schools under this section, and the means, under s. 121.55, by which it will provide such transportation.

(b) If the school board revises its criteria or policies under par. (a), it shall do so by resolution.

(5) NONRESIDENT SCHOOL DISTRICT ACCEPTANCE CRITERIA. (a) *Permissible criteria.* Except as provided in par. (c), the criteria for accepting and rejecting applications from nonresident pupils under sub. (3) (a) may include only the following:

1. The availability of space in the schools, programs, classes or grades within the nonresident school district, including any class size limits, pupil-teacher ratios, pupils attending the school district for whom tuition is paid under s. 121.78 (1) (a) or enrollment projections established by the nonresident school board.

2. Whether the pupil has been expelled from school by any school district during the current or 2 preceding school years for any of the following reasons or whether a disciplinary proceeding involving the pupil, which is based on any of the following reasons, is pending:

a. Conveying or causing to be conveyed any threat or false information concerning an attempt or alleged attempt being made or to be made to destroy any school property by means of explosives.

b. Engaging in conduct while at school or while under supervision of a school authority that endangered the health, safety or property of others.

c. Engaging in conduct while not at school or while not under the supervision of a school authority that endangered the health, safety or property of others at school or under the supervision of a school authority or of any employe of the school district or member of the school board.

d. Possessing a dangerous weapon, as defined in s. 939.22 (10), while at school or while under the supervision of a school authority.

public school in a nonresident school district pursuant to § 118.51(3), the student must follow the application procedures contained in that subsection. *See id.*

4. Whether the special education program or related services described in the child's individualized education program under s. 115.787 (2) are available in the nonresident school district or whether there is space available in the special education program identified in the child's individualized education program, including any class size limits, pupil-teacher ratios or enrollment projections established by the nonresident school board.

6. Whether the child has been referred to his or her resident school board under s. 115.777 (1) or identified by his or her resident school board under s. 115.77 (1m) (a) but not yet evaluated by an individualized education program team appointed by his or her resident school board under s. 115.78 (1).

(b) *Rejection after initial acceptance.* The criteria under par. (a) may provide that, notwithstanding the nonresident school board's acceptance of an application under sub. (3) (a) 3., at any time prior to the beginning of the school year in which the pupil will first attend school in the school district under this section, the school board may notify the pupil that he or she may not attend school in the school district if the school board determines that any of the criteria under par. (a) 2. are met.

(c) *Required preference.* A nonresident school board shall give preference in accepting applications under sub. (3) (a) to pupils and to siblings of pupils who are already attending public school in the nonresident school district.

(6) RESIDENT SCHOOL DISTRICT TRANSFER LIMITATIONS. A school board may limit the number of its resident pupils attending public school in other school districts under this section in the 1998–99 school year to 3% of its membership. In each of the 7 succeeding school years, a school board may limit the number of its resident pupils attending public school in other school districts to an additional 1% of its membership. If more than the maximum allowable number of resident pupils apply to attend public school in other school districts in any school year under this section, the school board shall determine which pupils will be allowed to attend public school in other school districts on a random basis, except that the school board shall give preference to pupils who are already attending public school in the school district to which they are applying under this section and to siblings of such pupils.

. . . .

¶ 3. McMorrow resided in Whitefish Bay from the date of his birth until August 1996, when he moved to Mequon. He attended Richards Elementary School in Whitefish Bay and ultimately graduated from Whitefish Bay Middle School in 1996. After moving to Mequon, McMorrow's resident school was Homestead

---

(9) APPEAL OF REJECTION. If the nonresident school board rejects an application under sub. (3) (a) or (7) or the resident school board prohibits a pupil from attending public school in a nonresident school district under sub. (6), (7) or (12) (b) 1., the pupil's parent may appeal the decision to the department within 30 days after the decision. The department shall affirm the school board's decision unless the department finds that the decision was arbitrary or unreasonable.

(10) PUPIL ASSIGNMENT. A nonresident school board may assign pupils accepted to attend public school in the school district under this section to a school or program within the school district. The school board may give preference in attendance at a school, program, class or grade to residents of the school district who live outside the school's attendance area.

. . . .

(15) DEPARTMENT DUTIES. The department shall do all of the following:

(a) *Application form.* Prepare, distribute to school districts and make available to parents an application form to be used by parents under sub. (3) (a). The form shall include provisions that permit a parent to apply for transportation reimbursement under sub. (14) (b).

(b) *Information and assistance.* Develop and implement an outreach program to educate parents about the open enrollment program under this section, including activities specifically designed to educate low-income parents, and services to answer parents' questions about the program and assist them in exercising the open enrollment option provided under this section.

(c) *Annual report.* Annually submit a report to the governor, and to the appropriate standing committees of the legislature under s. 13.172 (3), on the number of pupils who applied to attend public school in a nonresident school district under this section, the number of applications denied and the bases for the denials, and the number of pupils attending public school in a nonresident school district under this section.

High School, which he attended for his freshman and sophomore years. During his sophomore year, McMorrow decided to take advantage of the open enrollment law, with the intent to finish his high school education at Whitefish Bay High School. Accordingly, by application dated February 14, 1998, he applied to transfer from the Thiensville-Mequon School District to the Whitefish Bay School District pursuant to WIS. STAT. § 118.51 to attend grade 11.

¶ 4. On April 8, 1998, the Whitefish Bay School District denied the application. The stated reason for the denial was: "Priority is given to students who apply through the Chapter 220 Transfer Agreement. More students applied through the Chapter 220 Transfer Agreement than we have seats available at this grade level."[4] McMorrow appealed the District's decision to the SSPI by letter dated May 1, 1998. The SSPI affirmed the decision of the District, but for different reasons. The SSPI conceded that the reason stated by the District denying McMorrow's application was invalid; that is, Chapter 220 was irrelevant to processing McMorrow's open enrollment application. The SSPI noted: "It is important for districts to distinguish between Chapter 220 and Open Enrollment. Chapter 220 and Open Enrollment are based on two separate principles. . . . A district may not merely rely upon the Chapter 220 determination when making its Open Enrollment determination."

¶ 5. Despite what the SSPI's decision termed the District's "misplaced reliance on the Chapter 220 waiting list," the SSPI found that, in essence, the District's decision was supported by substantial evidence based on lack of class space. In this decision, the SSPI also

---

[4] Chapter 220 is the student transfer program created by WIS. STAT. § 121.85.

distinguished the District's admission of the three other open enrollment applicants from the District's denial of McMorrow's, reasoning that these three students were entitled to preference under the open enrollment law because each was a continuing student. The SSPI therefore concluded that the District's decision denying McMorrow's application for open enrollment was not arbitrary or unreasonable.[5]

¶ 6. McMorrow appealed the SSPI's decision to the circuit court. The circuit court reversed the SSPI's decision, concluding:

> The decision to accept the three students who wished to continue at Whitefish Bay High School in the 11th grade was not a decision based on a priority to an available space. It was a decision to accept them even though space was not available. Once this was done, the District's reliance upon the class size guidelines to deny Jordan McMorrow enrollment becomes arbitrary.

The State now appeals the circuit court's order reversing the SSPI's decision.

## II. DISCUSSION

### A. Standard of Review.

■

¶ 7. We review the agency's decision, not that of the circuit court. See Madison Metro. Sch. Dist. v. DPI, 199 Wis. 2d 1, 8, 543 N.W.2d 843 (Ct. App. 1995). However, our review is identical to that of the circuit court. See id. The issue in this case involves the application of

---

[5] After McMorrow's application was denied, he established residency in the Whitefish Bay School District, so that he could attend Whitefish Bay High School.

WIS. STAT. § 118.51, which presents a question of law. *See Thompson v. DPI*, 197 Wis. 2d 688, 697, 541 N.W.2d 182 (Ct. App. 1995). In reviewing questions of law arising from administrative proceedings, appellate courts apply three levels of deference: (1) "great weight" deference will apply when the "agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute . . ."; (2) "due weight" deference will apply when "the decision is very nearly one of first impression[ ]"; and (3) "de novo" review will apply when "the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented." *Id.* at 697 (citations omitted). Here, the issue involves interpretation of a newly enacted statute, with which the SSPI has had some, but certainly not extensive, experience. Accordingly, we conclude that "due weight" deference is the proper level of review.

¶ 8. Further, we are not to substitute our judgment for that of the agency as to the weight of the evidence as to any disputed finding of fact. WIS. STAT. § 227.57(6). We will not set aside the agency's findings if the findings are supported by substantial evidence. *See Kenosha Teachers Union v. WERC*, 39 Wis. 2d 196, 204, 158 N.W.2d 914 (1968).

¶ 9. In addition, resolution of this case depends on the interpretation and application of statutory provisions. "When interpreting a statute, we must ascertain and give effect to the intent of the legislature." *Beard v. Lee Enterprises, Inc.*, 225 Wis. 2d 1, 10, 591 N.W. 2d 156 (1999). In order to determine the legislative intent, we look first at the language of the

statute. *See id.* If the language is clear and unambiguous, we apply the plain meaning of the language and do not look to other sources to ascertain its meaning. *See id.*

*B. The SSPI's Decision.*

¶ 10. The SSPI conceded, and it is undisputed, that the District's original reason for denying McMorrow's enrollment—involving the Chapter 220 students—was invalid and improper; therefore, it need not be further addressed. The SSPI must affirm a school district's decision unless the appellant demonstrates that the decision was arbitrary or unreasonable. *See* WIS. STAT. § 118.51(9) (The department shall affirm the school board's decision unless the department finds that the decision was arbitrary or unreasonable.); WIS. ADMIN. CODE § PI 36.10(3)(b). Our decision focuses on whether the SSPI's affirmance of the District's decision, on other grounds, can be upheld. We conclude that it cannot because: (1) McMorrow demonstrated that the school district's decision was arbitrary; (2) there is not substantial evidence to support the SSPI's findings of fact; and (3) the SSPI erroneously interpreted the statutory provisions involved.

¶ 11. In affirming the District's decision to deny McMorrow enrollment, the SSPI provided the following pertinent findings of fact:

> [ ] To support its space determination, the district provided its Administrative guidelines used for the management of student transfers. The guidelines identify core classes in the high school. It identifies average class size. The guidelines then require a high school grade to be closed to transfer students when at least two of the core classes are at

or above the average class size.[ ] Two eleventh grade classes, Advance Composition and US History had class sizes in excess of the average class size. Therefore, the grade was closed.

[ ] The district did allow three continuing 11th grade students to stay at Whitefish Bay under open enrollment. Pursuant to sec. 118.51(5)(c), Stats., these students were entitled to a preference to be accepted into the open enrollment program at Whitefish Bay.

The SSPI concluded that the District's "decision was not arbitrary or unreasonable."

*C. Pertinent Statutory Provisions.*

¶ 12. Resolution of this appeal involves interpretation of two particular subsections of WIS. STAT. § 118.51:

(3) APPLICATION PROCEDURES.. . . 2. . . . . If a nonresident school board receives more applications for a particular grade or program than there are spaces available in the grade or program, the nonresident school board shall determine which pupils to accept on a random basis.

. . . .

(5) NONRESIDENT SCHOOL DISTRICT ACCEPTANCE CRITERIA. . . .

. (c) *Required preference.* A nonresident school board shall give preference in accepting applications under sub. (3) (a) to pupils and to siblings of pupils who are already attending public school in the nonresident school district.

¶ 13. In addition, "Policy 425, Open Enrollment," which was adopted by the Whitefish Bay School District Board of Education, and sets forth the "decisional criteria" for nonresident applications pursuant to WIS.

STAT. § 118.51, is pertinent to our review. Policy 425 provides in pertinent part:

> Decisions on nonresident applications will be based only on the following criteria:
>
> A. Whether there is space available for Nonresident Students. . . . In determining such space available, the District Administrator shall consider, but not be limited to the following:
>
> 1. District practices, policies, procedure and other factors regarding class size ranges for particular programs or classes.
>
> 2. District practices, policies, procedures or other factors regarding faculty-student ratio ranges for particular programs, classes or buildings.
>
> 3. Enrollment projections . . . .
>
> 4. The number of nonresident students currently attending the schools of the district for whom tuition is paid by another District under section 121.78(1)(a), Wis. Stats.

*D. Application.*

¶ 14. The SSPI based its decision on materials relative to class sizes submitted by the school district during the appeal process. The materials provided that the 11th grade was closed to transfer students because two of the six core classes exceeded maximum capacity. One of the classes, Advanced Composition, had 242 students registered, split into twelve sections for an average class size of 20.167. The maximum class size

for this class was 20 students per section. The other class, U.S. History, had 260 students registered, split into 10 sections for an average class size of 25. The maximum class size for this class was 25 students. Accordingly, the school district *could have* denied all open enrollment applications on this basis in accord with WIS. STAT. § 118.51(5)(c) and Policy 425. However, that is not what happened in this case.

¶ 15. McMorrow was one of four open enrollment applicants seeking admission to the 11th grade at Whitefish Bay High School. The other three applicants were: (1) Lorian Becker: Lorian had been a student in the District from kindergarten through the 10th grade. Her parents were moving out of the District, but wished to have Lorian complete her schooling in Whitefish Bay; (2) Michael Auda: Michael had been a student in the District from the 2nd grade through the 10th grade, although he resided in the Shorewood School District. His parents paid tuition for Michael to attend school in Whitefish Bay, and wanted him to complete high school at Whitefish Bay; (3) Abigail Weimer: Abigail had attended school in the District in 9th and 10th grades. Her mother was marrying an individual who was employed by the City of Milwaukee and, therefore, was required to move within the city's limits. Thus, the District processed four applications for open enrollment for the 11th grade at Whitefish Bay High School. They denied only McMorrow's application. The District approved the other three student applicants despite the fact that there was no class space available in the 11th grade because the two core classes referenced above were at their maximum limits.

¶ 16. The District and the SSPI justified the admission of the three other students under the "required preference" given to *continuing* students con-

tained in WIS. STAT. § 118.51(5)(c). We conclude that both the SSPI's factual findings and statutory interpretation were erroneous. This statutory provision requires the District to "give preference in accepting applications under sub. (3)(a), to pupils and to siblings of pupils who are already attending public school in the . . . District." *Id.* However, this provision applies only when there are *spaces available* in the first place. Subsection (3)(a) provides that when there are more applicants *than spaces available*, the pupils accepted shall be determined on a random basis. *See* WIS. STAT. § 118.51(3)(a)2. These statutory provisions are clear and unambiguous, and must be applied as written. *See Beard,* 225 Wis. 2d at 10. In the instant case, there were *no* spaces available in the 11th grade. Thus, as pointed out by the circuit court: "The decision to accept the three students who wished to continue at Whitefish Bay High School in the 11th grade was not a decision based on a priority to an available space. It was a decision to accept them even though space was not available." This is the only reasonable interpretation of the statutory language. The language suggests that first a space determination must be made, with continuing students thereafter being given the first opportunity to fill the available spaces. As McMorrow points out, "[t]here would be no need to give preference if Open Enrollment applicants who were also continuing students were already included in the space availability determination."

¶ 17. Thus, the SSPI's finding of fact that the three other students were accepted because each was entitled to priority under WIS. STAT. § 118.51(5)(c) is premised on an incorrect interpretation of the statute. In turn, the SSPI relied on this erroneous interpreta-

tion of the same statutory provision in reaching its conclusion. The SSPI concluded that because the three other students were entitled to the preference, the decision of the District was not arbitrary or unreasonable. However, when the statutes are interpreted correctly, the three other students were not entitled to the preference and, thus, the District's reliance upon the class size guidelines to deny McMorrow enrollment becomes arbitrary. "Arbitrary . . . action on the part of an administrative agency occurs when it can be said that such action is unreasonable or does not have a rational basis." *Olson v. Rothwell*, 28 Wis. 2d 233, 239, 137 N.W.2d 86 (1965) (citation omitted).

¶ 18. As the trial court pointed out:

> No rational explanation has been presented by the District for its position that says, in effect, average class sizes of 20.4167 for Advanced Composition and 25.3 for U.S. History (the averages which include the three students) are acceptable, but average class sizes of 20.5 for Advanced Composition and 25.4 for U.S. History (the averages if Jordan McMorrow is also accepted) are not. This Court doubts that a rational explanation could be made for this position.
>
> . . . On the state of this record, three students were accepted by the District in spite of the District's class size Guidelines and a fourth was denied that same exception without any explanation of the reason for the *denial of that student*. That is arbitrary. A decision without a *valid* stated reason is unreasonable.

In other words, it is arbitrary and unreasonable to make an exception to the class size guidelines to admit three students into the 11th grade, but deny McMorrow's admission without a valid reason.

¶ 19. In sum, the circuit court's decision was correct. The SSPI erred when it found that WIS. STAT. § 118.51(5) supported the preferential treatment of the three continuing students when no class space was available; and, the SSPI erred when, based on that finding, it concluded that the District's decision to deny McMorrow's application for class space reasons was not arbitrary or unreasonable. We affirm the circuit court's order reversing the SSPI's decision.

*By the Court.*—Order affirmed.