**In the Matter of the EXPULSION Of I.A.L. from Osseo Area Schools Independent School District No. 279.**

No. A03–762.

Court of Appeals of Minnesota.

Feb. 17, 2004.

Michael C. Davis, St. Paul, MN, for relator I.A.L.

Mike Hatch, Attorney General, Martha J. Casserly, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Education.

Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn, Deans & Olson, Mendota Heights, MN, for respondent Independent School District No. 279.

Considered and decided by TOUSSAINT, Chief Judge, Presiding; LANSING, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

By writ of certiorari, relator challenges the order of respondent the Minnesota Department of Education, affirming relator's expulsion by respondent school district. Relator argues that (1) a 29 day delay between the initial suspension and the initiation of expulsion proceedings violated the procedural due process guarantees of the United States Constitution and (2) there is insufficient evidence to support the commissioner's decision. We affirm.

## FACTS

On January 24, 2003, I.A.L. engaged in a fistfight with another student, R.S.J., in the cafeteria of Brooklyn Junior High School. School employees Gretchen Jensen, Kendall Olson, Kristofor Rosenberg, and Dennis Wall were supervising the cafeteria when the fight began. Upon seeing the girls fighting, the cafeteria supervisors moved toward the girls and repeatedly directed them to stop fighting. But the girls continued to fight. In an attempt to break up the fight, Jensen stepped between I.A.L. and R.S.J. I.A.L. hit Jensen and pulled out hair from Jensen's head. When Jensen told I.A.L., "You're not hitting her, you're hitting me," I.A.L. stopped fighting.

On the day of the fight, I.A.L. was suspended for five days. On January 29, the Osseo Area Schools Independent School

District No. 279 (school district) notified I.A.L.'s parents that it was suspending I.A.L. for a second five-day period, effective February 3, and recommending expulsion of I.A.L. An attorney for the school district contacted I.A.L.'s parents on February 7 to review I.A.L.'s options in light of the recommendation for expulsion. I.A.L.'s mother expressed her intent to proceed with an agreement in lieu of expulsion. The school district faxed a copy of the agreement to I.A.L.'s mother on February 11 and did not commence expulsion proceedings. When contacted by the school district on February 25, I.A.L.'s mother advised that she wanted to confer with an attorney regarding the agreement. On March 3, I.A.L.'s attorney served a temporary restraining order on the school district and indicated that I.A.L. and her parents declined to enter into an agreement in lieu of expulsion.

Upon receipt of the temporary restraining order, the school initiated expulsion proceedings and suspended I.A.L. for another five-day period, beginning March 5.[1] On March 7, the school district served a notice of intent to expel I.A.L. for 12 months. An independent hearing officer conducted an expulsion hearing on March 11. On March 18, the school board adopted the hearing officer's recommendation to expel I.A.L. for 12 months. I.A.L. appealed the decision to the Minnesota Department of Children, Families and Learning (MDE), the predecessor to the Minnesota Department of Education. The MDE affirmed the school board's expulsion of I.A.L., and this appeal followed.

## ISSUES

I. Did the delay between the incident giving rise to the expulsion and the initi-

---

**1.** Although I.A.L. was not suspended during the period between February 8 and March 5, I.A.L. did not return to school. Thus, although 28 days elapsed between the initial suspension and the initiation of the expulsion proceedings, she was suspended for only 15 days.

ation of expulsion proceedings violate I.A.L.'s procedural due process rights?

II. Is the MDE's decision supported by the record?

## ANALYSIS

### I.

I.A.L. argues that the 29–day delay between the fight with R.S.J. and the initiation of expulsion proceedings violated procedural due process rights guaranteed by the United States Constitution. As a question of law, we review de novo whether the procedure employed here was unconstitutional. *Zellman ex rel. M.Z. v. Ind. Sch. Dist. No. 2758*, 594 N.W.2d 216, 220 (Minn.App.1999), *review denied* (Minn. July 28, 1999).

■ It is well settled that a student's entitlement to a public education is a property interest that is protected by the Due Process Clause of the United States Constitution and may not be taken away for student misconduct without adherence to the minimum procedures required by that clause. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). In *Goss*, the United States Supreme Court held that a suspension of up to 10 days is a "serious event" for a student and requires, at a minimum, notice and a hearing. *Id.* at 576–79, 95 S.Ct. at 737–38. "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584, 95 S.Ct. at 741.

■ The Minnesota Pupil Fair Dismissal Act (PFDA) provides that "[n]o public school shall deny due process ... to any [student] involved in a dismissal proceeding" leading to expulsion. Minn.Stat. § 121A.42 (2002); *In re Expulsion of E.J.W.*, 632 N.W.2d 775, 780 (Minn.App. 2001). When a suspension is imposed during the process of initiating an expulsion proceeding, the PFDA provides that the suspension period may not exceed 15 days. Minn.Stat. § 121A.41, subd. 10 (2002).[2] But, unlike the laws of other states, the PFDA does not set a limitations period for initiation of expulsion proceedings after the alleged student misconduct. *See, e.g.,* N.J. Stat. Ann. § 18A:37–2.1 (2002) (requiring immediate suspension of a pupil who assaults a teacher or administrator pending additional suspension or expulsion proceedings to commence within 30 calendar days after the initial suspension); Cal. Ed.Code § 48918(a) (2002) (requiring expulsion decision to be made within 30 days after student's removal from school). As a matter of first impression, we consider whether the lapse of 29 days between the student's initial suspension and the initiation of expulsion proceedings constitutes an unreasonable delay, in violation of a student's right to procedural due process.

■ In *Mathews v. Eldridge*, the United States Supreme Court established the following factors for consideration when determining whether due process has been afforded:

First, the private interest ... affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional

2. This 15–day maximum suspension period falls at the lower end of the range established by other states. *See, e.g.,* Wis. Stat. § 120.13, subd. (1)(b)2 (2002) (15 day maximum suspension period); Colo.Rev.Stat. § 22–33–105, subd. (2)(b) (2002) (25 day maximum suspension period); Mo.Rev.Stat. § 167.171, subd. 1 (2002) (180 day maximum suspension period).

or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *E.J.W.*, 632 N.W.2d at 780. Accordingly, we apply these factors to I.A.L.'s claim that her due process rights were violated.

■ The private interest affected by the school district's expulsion procedure is I.A.L.'s right to an education, which is a protected property interest. *See Goss*, 419 U.S. at 574, 95 S.Ct. at 736. The school district's action deprives I.A.L. of the right to attend school within the school district for one year from the date of the expulsion, which was 29 days after the initial suspension.

■ In determining whether the procedures used by the school district risked the erroneous deprivation of I.A.L.'s right to an education, we examine whether the delay in initiating the expulsion proceedings was caused by the school district's procedures. The school district suspended I.A.L. for a total of 15 school days pending commencement of the expulsion proceedings.[3] I.A.L. did not attend school for a period of 17 school days between the last day of the second suspension and the first day of the third suspension. During this 17–day period, the school district did not initiate expulsion proceedings because I.A.L., after receiving a proposal to settle the disciplinary action in lieu of expulsion, notified the school district that she intended to accept the settlement offer and asked for time to confer with an attorney about her decision. Two weeks after receiving the proposed agreement, I.A.L. rejected the settlement and notified the school district of her intent to exercise her right to an expulsion hearing. The school district then suspended I.A.L. again and initiated expulsion proceedings four days after I.A.L. rejected the settlement offer. Thus, the delay in initiating the expulsion proceedings is directly attributable to I.A.L.'s notification of an intent to settle in lieu of expulsion and request to confer with an attorney.

■ We find no fault in the school district's procedures when the reason for the delay between the initial suspension and the initiation of the expulsion process was to honor I.A.L.'s request for time to confer with an attorney, in anticipation of not proceeding with an expulsion. Under the circumstances here, procedural safeguards requiring the school district to initiate the expulsion hearing notwithstanding a request for time to confer regarding a settlement offer pose the risk of both interfering with I.A.L.'s ability to seek the advice of counsel regarding her rights and alternatives to the expulsion and unnecessarily hindering the possibility of settlement.

In reaching our decision, we note that courts that have considered this issue in states with a maximum suspension period similar to that of the PFDA have concluded that a delay between the initial suspension and expulsion proceedings, comparable in length to the one at issue here, did not violate the student's procedural due process rights. *See Hernandez v. Sch. Dist. No. 1*, 315 F.Supp. 289, 293–94 (D.Colo.1970) (holding that 25–day period between misconduct and initiation of

---

**3.** Two of the suspension periods were consecutive, from January 24 to 29 and from February 3 to 7. The third suspension period occurred from March 5 to 11.

expulsion proceedings during which the school district attempted resolution in lieu of expulsion was not an unreasonable delay); *Madison Metro. Sch. Dist. v. Wis. Dept. of Pub. Instruction,* 199 Wis.2d 1, 543 N.W.2d 843, 848 (App.1995) (holding that due process guarantees did not require expulsions to occur within the 15–day maximum suspension period). Similarly, a comparable delay between the initial suspension and the expulsion proceedings in a state without maximum suspension periods was found not to violate a student's procedural due process rights. *Hill v. Rankin County,* 843 F.Supp. 1112, 1119 (S.D.Miss.1993) (holding that 30–day period between indefinite suspension and expulsion hearing did not violate student's procedural due process rights).

Accordingly, we conclude that the 29–day period between I.A.L.'s initial suspension and the initiation of expulsion proceedings was not an unreasonable delay in violation of I.A.L.'s federal procedural due process rights.

## II.

■ I.A.L. next challenges the sufficiency of the evidence to support the MDE's decision. When an agency acts in a quasi-judicial capacity, we apply the substantial evidence test on review. *In re Petition of N. States Power Co.,* 416 N.W.2d 719, 723 (Minn.1987). We give great deference to an agency's findings of facts. *Info Tel Communications, L.L.C. v. Minn. Pub. Utils. Comm'n,* 592 N.W.2d 880, 884 (Minn.App.1999), *review denied* (Minn. July 28, 1999). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some

evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 466 (Minn.2002). Under the substantial-evidence test, we evaluate the evidence relied on by the agency in view of the entire record as submitted. *Cable Communications Bd. v. Nor–West Cable Communications P'ship,* 356 N.W.2d 658, 668–69 (Minn.1984). If an agency engages in reasoned decision-making, the reviewing court will affirm. *Id.*

■ In affirming I.A.L.'s expulsion, the MDE found that I.A.L. failed to establish that the school board's decision to expel her was inappropriate in any way. The grounds for I.A.L.'s expulsion were (1) willful violation of reasonable school board regulations, (2) willful conduct that significantly disrupted the rights of others to an education or the ability of school personnel to perform their duties, and (3) willful conduct that endangered I.A.L., other students, school district employees or school property.

The record establishes that I.A.L. violated reasonable school board regulations, which proscribe (1) the intentional infliction of "harm upon another person," (2) disruptions to school operations, and (3) insubordination by failing "to respond in an appropriate manner to a directive from a staff member or person serving in a supervisory role...." I.A.L. engaged in fighting with R.S.J. and failed to respond to directives from several staff members to stop fighting and to Jensen's attempt to break up the fight by standing between the girls. During the course of the fight, I.A.L. pulled out a clump of Jensen's hair. In a signed statement, I.A.L. admitted that she continued to fight and pulled out Jensen's hair after school officials inter-

vened. The physical violence intervention plan in the student handbook that I.A.L. received and reviewed in the beginning of the year states that "[a]ny physical assault may result in a recommendation for expulsion."

■■ I.A.L. asserts that fighting with R.S.J. was not "willful" behavior because she acted in self-defense. I.A.L. argues that a provision of the student handbook, which states "this is a public place and all the laws, social norms, and common sense rules of public behavior apply on school property," incorporates the criminal self-defense statute, which permits a person to use reasonable force against another to resist an offense. *See* Minn.Stat. § 609.06, subd. 1(3) (2002).

The school district argues that, if given credence, I.A.L.'s self-defense claim would divest the school district of its authority to promulgate and impose rules and regulations under Minn.Stat. § 123B.02, subd. 1 (2002). We agree. The United States Supreme Court has recognized the school district's authority to promulgate disciplinary procedures. *See Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) (stating that "the Court has repeatedly emphasized the need for affirming the comprehensive authority of ... school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools"). In *New Jersey v. T.L.O.*, the Supreme Court again endorsed the deference owed to this authority and stated that

> [t]he promulgation of a rule forbidding specified conduct presumably reflects a judgment on the part of school officials that such conduct is destructive of school order or of a proper educational environment. Absent any suggestion that the rule violates some substantive constitutional guarantee, the courts should, as a general matter, defer to that judgment.

469 U.S. 325, 342 n. 9, 105 S.Ct. 733, 743 n. 9, 83 L.Ed.2d 720 (1985). Given the school district's broad authority to establish rules governing conduct in schools, the absence of a self-defense provision in the school district's student discipline policy leads us to conclude that a self-defense claim is neither intended nor implied. The school district policy contained in the student handbook clearly provides that any physical assault will not be tolerated and may result in expulsion. Thus, we reject I.A.L.'s assertion that her self-defense claim can be recognized with a broad reading of the student handbook.

Moreover, even if a self-defense claim were available under the school district's policy, I.A.L.'s self-defense claim would fail on its merits. I.A.L. continued to fight while cafeteria supervisors were attempting to separate her and R.S.J. Thus, she did not use the opportunity to retreat from the danger as required for a self-defense claim. *See State v. Basting*, 572 N.W.2d 281, 285 (Minn.1997).

From our careful review of the record, we conclude that there is substantial evidence to support the MDE's findings that I.A.L. willfully engaged in fighting, in violation of school board regulations prohibiting fighting, insubordination, and disruptions to school operations.

## DECISION

The 29–day period between the initial suspension and the initiation of expulsion proceedings is not an unreasonable delay in violation of the procedural due process

guarantees of the United States Constitution. The MDE's decision to affirm I.A.L.'s expulsion is supported by substantial evidence.

**Affirmed.**