695 N.W.2d 656 (2005)
In the Matter of the Expulsion of Z.K. (A04-1617) and S.K. (A04-1618) from Anoka Hennepin Independent School District No. 11.
Nos. A04-1617, A04-1618.
Court of Appeals of Minnesota.
May 17, 2005.
*658 Alfred Stanbury, Stanbury Law Firm, P.A., Minneapolis, MN, for relators.
Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn, & Deans, P.A., Mendota Heights, MN, for respondent Independent School District No. 11.
Mike Hatch, Attorney General, Martha J. Casserly, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Education.
Considered and decided by MINGE, Presiding Judge; WRIGHT, Judge; and PORITSKY, Judge.

OPINION
PORITSKY, Judge.[*]
Relators S.K. and Z.K. were expelled from respondent school district because they were involved in shooting another juvenile with a BB gun. The school board expelled both relators for periods of one year. On appeal from the Commissioner of Education's order affirming the school board's expulsion order, relators argue that the commissioner's decision must be reversed because (1) the hearing waivers were invalid and nullified the school board's decision; (2) the school district lacks jurisdiction over student acts occurring off school property and outside a school zone; (3) the commissioner's decision was based on insubstantial, conflicting, and inadmissible evidence; and (4) the expulsion decisions were arbitrary and capricious. We conclude that because the parents did not receive proper notice of the availability of free or low-cost legal assistance as required by Minn.Stat. § 121A.47, subd. 2(f)(1) (2004)[1], the hearing-waivers were invalid. Therefore, we reverse and remand.

FACTS
This appeal arose from an incident that resulted in the expulsion of two brothers, relators Z.K. and S.K.,[2] from Sandburg Middle School (Sandburg) in Anoka County. At the time of the incident, Z.K., and his friend and neighbor B.H. were eighth-grade students at Sandburg, and Z.K.'s brother, S.K., was a sixth-grade student at *659 Sandburg. T.K., the victim in the incident, was S.K.'s classmate.
On the morning of May 11, 2004, Z.K. and S.K. met B.H. in the parent's garage before the school bus arrived. The boys observed T.K., who was waiting at the bus stop, and B.H. suggested that they shoot T.K. with a BB gun. The gun, which belonged to B.H., had been previously left at the brothers' home. One of the brothers got the gun and gave it to B.H. Then one of the brothers called out to T.K. to come over to their house to play basketball. B.H. hid behind the retaining wall with the B.B. gun, and when T.K. arrived, B.H. popped up and pointed the gun at T.K. As T.K. turned and ran back toward the bus stop, B.H. shot the BB gun at T.K., hitting him in the back. B.H. then handed the gun to Z.K. who also shot in the direction of T.K.
Shortly after the incident, the boys boarded the school bus and went to school. Later that day, an unidentified student informed Sandburg Assistant Principal Deb Shepard of the BB-gun incident. Shepard called T.K. into her office, and he admitted that he had been shot with a BB gun that morning. T.K. identified S.K., Z.K., and B.H. as the students involved. Shepard and David Law, another Assistant Principal at Sandburg, called S.K. and Z.K. into Law's office to discuss the morning's incident. Law informed the brothers that the matter was serious, and that if they were comfortable with doing so, he would take their statement. Law then met with each boy individually, and each boy told Law his version of the events while Law typed it on the computer. Each boy then read the statement and signed it.
At the end of the school day on May 11, school officials met with S.K. and Z.K.'s parents to explain the situation. The parents were informed that S.K. and Z.K. each received an initial ten-day out-of-school suspension for their conduct. The parents were also informed that the suspension was "pending possible expulsion." The next day, Doug Hodson, the Assistant Principal of Alternative Programs for the School District, talked with the mother about the situation. During the conversation, the mother asked Hodson if the family should retain a lawyer. According to the mother, Hodson replied that "if [they] knew or had a family friend who was a lawyer, sure," but "not to spend a lot of money on a lawyer because that would probably be a waste since [they] probably would not win against District 11." The mother subsequently shared Hodson's advice with her husband. Hodson, however, denied making the statement.
On May 14, 2004, the family met with Hodson. At the meeting, the parents admitted that their boys "did a stupid thing," and provided Hodson with handwritten notes from S.K. and Z.K. explaining the events of May 11. Hodson then provided the family with letters informing them that the action being recommended by the School District was expulsion of S.K. and Z.K. Hodson advised the family that "the School District administration intended to recommend that [S.K.] be expelled for the remainder of the school year and that [Z.K.] be expelled for one year under probationary conditions, however the [s]chool [b]oard makes the final decision and has the authority to expel each student for a period of up to one calendar year." Hodson also explained that in determining whether to expel the boys, a deciding factor could be where the incident took place. Hodson informed the family that if they disputed the facts, or felt the location of the incident was at issue and the incident did not warrant an expulsion, S.K. and Z.K. each had the right to a hearing before a hearing officer who would review all the *660 evidence and make a recommendation to the school board as to whether S.K. and Z.K. should be expelled. But in response to Hodson's advisements regarding a hearing, Hodson claims that the father commented "why get an attorney when that is what happened?" According to Hodson, he replied by explaining that it was their decision, but reassured them that they would have an opportunity to address the situation with the school board members at a later meeting.
At the end of the meeting with Hodson, the parents signed waivers for both S.K. and Z.K. that waived their right to hearings on the matter and further provided that the school board may proceed to expel the brothers without a hearing. Shortly thereafter, the school board held a closed session meeting where the incident was discussed. The parents were allowed to attend the closed session meeting, and the father provided the board with a typed statement of his comments regarding the situation.
After considering the situation in light of the District's policy, the school board adopted a resolution expelling S.K. for one calendar year, but allowing him to return to school on November 15, 2004, under probationary conditions. The school board also adopted a resolution expelling Z.K. for one calendar year, but allowing him to return to school on April 11, 2005, under probationary conditions. The family was mailed copies of the resolution on May 25, 2004.
Relators appealed the school board's actions to the Commissioner of the Minnesota Department of Education. On August 9, 2004, the commissioner issued a decision affirming the school board's expulsion of S.K. and Z.K. Relators appeal by writ of certiorari, and the appeals were consolidated for review.

ISSUES
I. Were the hearing waivers invalid?
II. Did the School District have jurisdiction to expel S.K. and Z.K.?
III. Did the commissioner base its decision on insubstantial, conflicting, and inadmissible evidence, thereby rendering the decisions in error?
IV. Was the commissioner's decision arbitrary and capricious?

ANALYSIS
A reviewing court may reverse an administrative agency's decision only if the decision violates a constitutional provision, is outside the statutory authority or jurisdiction of the agency, is based on unlawful procedures, reflects an error of law, is unsupported by substantial evidence, or is arbitrary and capricious. Minn.Stat. § 14.69 (2004).

I.
Relators argue that the school board's decision should be reversed because the waivers signed by relators were invalid. But the school board argues that notwithstanding the validity of the waivers, relators' appeal should be dismissed because the commissioner does not have authority to review the matter. The school board further contends that relators waived this issue by failing to raise it below.

A. Authority to review the matter
The school board argues that the commissioner does not have authority to review the matter because relators did not have the right to appeal the school board's expulsion orders. The board argues that (1) under the statute authorizing an appeal to the commissioner, the board must have made a decision and (2) that its expulsion orders in this case were not decisions. This argument is based on Minn.Stat. *661 § 121A.49 (2004)[3], which allows a party to appeal from a decision of the school board,[4] and on Minn.Stat. § 121A.47, subd. 13 (2004), which provides that the school board shall base its decision on the recommendation of the hearing officer or school board member.[5] Thus, the school board reasons, if there were no prior action by a hearing officer or board member, the board cannot make a decision, but instead, "simply takes action to expel the student based upon the waiver." The school board concludes that when relators waived their right to a hearing, they also waived the right to appeal.
This argument fails. Minn.Stat. § 121A.47 (2004), which governs expulsion, speaks of initiating an "action" in subdivision 1 and uses the phrase "proposed action" in subdivisions 8 and 9 in outlining the pupil's procedural rights. However, when the statute, in subdivision 13, gets to describing the ultimate act taken by the school board at the conclusion of the proceeding, it uses the word "decision," as the school board notes; but it does not use the word "action." The school board's argument requires that subdivision 13 be read to state that the ultimate act taken by a school board is either a decision (which is appealable to the commissioner) or an action (which is not). But because the legislature used only the word "decision" in describing the ultimate act, we conclude that any act of a school board in expelling a student is a decision and is appealable within the meaning of section 121A.49.
Moreover, we note that in each of the school board's resolutions to expel relators, the notifications specifically provide that "[relators] have the right to appeal this decision to [the] Department of Education." (Emphasis added.) Due process includes the right of appeal from or review of a decision regarded by a litigant as unjust. Hunter v. Zenith Dredge Co., 220 Minn. 318, 326, 19 N.W.2d 795, 799 (1945). Although the waivers signed by relators addressed the right to a hearing before the school board, the waivers did not mention a right to appeal.[6] To conclude that the *662 commissioner has no authority to review the school board's decision because relators waived their right to a hearing on the matter would fly in the face of conventional due process rights.
Finally, as applied to the facts of this case, the school board's argument is circular. If the board's action of expulsion is based on the waivers (as the school board asserts), and if the waiver turns out to be invalid, the only way the parent can challenge the waiver, and hence the expulsion, is by an appeal. But, under the school board's argument, the very waivers that the parents allege are invalid would operate to waive their right to challenge the validity of the waivers. This reading leads to an absurd result. See Minn.Stat. § 645.17 (2004) (stating the legislature does not intend a result that is absurd). On all the above considerations, we conclude that relators did not waive their right to appeal and that the commissioner had authority to review the matter.

B. Failure to raise the issue below
The school board next argues that even if the commissioner had authority to review the decision, this court should not address the waiver issue because relators failed to raise it below. The general rule that matters not raised below are not addressed on appeal extends to appeals from administrative decisions. E.N. v. Special Sch. Dist. No. 1, 603 N.W.2d 344, 348 (Minn.App.1999). But an appellate court, in its discretion, may review any matter in the interest of justice. Agra Res. Coop v. Freeborn County Bd. of Comm'rs., 682 N.W.2d 681, 684 (Minn.App.2004).
In any event, the record reflects that relators raised the issue of the validity of the hearing-waivers before the commissioner. Relators' brief in support of their appeal to the commissioner distinctly raised the issue, which is reflected by the commissioner's order that provides: "[relators] challenge [ ] the validity of the waiver of expulsion hearing asserting that [their] parents were discouraged from obtaining legal counsel, and that they were led to believe that [relators] would only be expelled for the remainder of the school year." Accordingly, the issue is properly before this court.

C. Validity of the hearing-waiver
Relators argue that when they waived their right to a hearing, they were not fully informed of their rights under the Pupil Fair Dismissal Act (PFDA). Specifically, relators base their argument on Minn.Stat. § 121A.47, subd. 2(f)(1), which requires that written notice of intent to expel a student must:
(f) inform the pupil and parent or guardian of the right to:
(1) have a representative of the pupil's own choosing, including legal counsel, at the hearing. The district shall advise the pupil's parent or guardian that free or low-cost legal assistance may be available and that a legal assistance resource list is available from the Department of Education.
Relators contend that because they were not advised "that free or low-cost legal assistance may be available and that a legal assistance resource list is available from the Department of Education," their hearing-waivers were invalid. We note that the statute does not make such assistance dependent on financial need. See id.
At the May 14, 2004, meeting between Hodson and relators, Hodson provided relators with letters from the school district *663 informing relators that expulsion was being recommended. These letters provide that: "I have enclosed for your information a copy of the [PFDA]." Although the copies of the PFDA were not attached to the May 14 letters contained in the record, the school board insists that relators were provided with a copy, and relators do not dispute this fact. We therefore assume that relators were provided with copies of the entire PFDA.
But according to the record, a copy of the entire PFDA was the only notice that relators received of the availability of legal assistance. The record reflects that relators had voiced a concern about obtaining legal counsel and were worried about the cost. Although the nature of the conversation concerning the retention of legal counsel is disputed, the record clearly indicates that relators were not specifically advised "that free or low-cost legal assistance may be available and that a legal assistance resource list is available from the Department of Education." Minn.Stat. § 121A.47, subd. 2(f)(1). The PFDA consists of 17 sections, with some sections containing numerous subdivisions. The availability of free or low-cost counsel appears in one sentence in section 121A.47 (entitled, "Exclusion and Expulsion Procedures"), subdivision 2 (entitled "Written notice"). Even assuming that relators received a copy of the entire PFDA, in our opinion the mere receipt of the entire PFDA is not sufficient notice of the availability of low-cost legal assistance or of the existence of the department's legal assistance resource list.
Moreover, the record indicates that Hodson advised the brothers' parents that "with respect to the length of expulsion, the School District administration intended to recommend that [S.K.] be expelled for the remainder of the school year and that [Z.K.] be expelled for one year under probationary conditions...."[7] We recognize that Hodson also told relators that "the [s]chool [b]oard makes the final decision and has the authority to expel each student for a period of up to one calendar year," but the fact that Hodson indicated to the brothers' parents that the recommended length of expulsion was somewhat less than the expulsion that S.K. and Z.K. actually received, further compounds the lack of notice provided to relators concerning the availability of low-cost legal counsel. On these circumstances, we conclude that the notice did not adequately advise relators that free or low-cost legal assistance was available, and, therefore, the waivers were not knowing and intelligent. While we are mindful of the catastrophic events that have resulted from guns in the hands of students, we are equally mindful of the legislative requirement that students be treated fairly, including the requirement that students be advised that "free or low-cost legal assistance" may be available. Because we conclude that relators' waivers were not knowing or intelligent, we reverse the school board's decision expelling Z.K. and S.K., and remand the matter to the school board for further proceedings.

II.
Relators also contend that because the incident occurred "near" the bus stop, *664 rather than "at" the bus stop, the incident is outside the scope of the weapons policy. Thus, relators argue that the school board did not have jurisdiction over the incident.[8]
In concluding that the school board had jurisdiction over the matter, the commissioner cited a previous decision that held:
The District is empowered to discipline a student for off-campus misconduct if the school can show either that 1) the misconduct is a continuation of or has a nexus with improper conduct that occurred on school grounds, or 2) the student's actions have a direct and immediate effect either on school discipline or on the general safety and welfare of the students.
In the Matter of the Expulsion of J.M. from ISD No. 834, Minnesota Department of Children, Families & Learning (Feb. 18, 1997). The facts here are relatively undisputed. The victim was lured away from the bus stop under the guise of playing basketball. The victim was then shot with a BB gun. The brothers were involved in the incident, and all individuals involved in the matter were students at Sandburg Middle School. Under the specific facts of this case, the School District had discretion to apply its disciplinary policy to the actions of S.K. and Z.K. in order to protect the general safety and welfare of its students. Therefore, we conclude that the school board had jurisdiction over the matter, and we need not address relators' argument concerning the precise location where the incident occurred.
The relators' other arguments are moot in light of our decision to reverse and remand for further proceedings.

DECISION
The waivers signed by relators were invalid because relators were not properly advised that free or low-cost legal assistance may be available and that a legal assistance resource list is available from the Department of Education. Because the waivers were invalid, the decision of the school board expelling both students is reversed and the matter remanded for further proceedings before the board. We express no opinion concerning the ultimate outcome of the proceeding.
Reversed and remanded.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Appellate courts generally apply the law as it exists at the time they rule on a case, unless a change in the law affects rights that were vested before the change. See Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs, 617 N.W.2d 566, 575 (Minn.2000).
[2] S.K. and Z.K. are collectively referred to in this opinion as "the brothers." Their parents are referred to as "the parents" and their mother and father as "the mother" and "the father" respectively.
[3] See supra, note 1.
[4] Minn.Stat. § 121A.49 (2004) provides in pertinent part:

A party to an exclusion or expulsion decision made under [the PFDA] may appeal the decision to the commissioner of education within 21 calendar days of school board action.
...
In an appeal under this section, the commissioner may affirm the decision of the agency, may remand the decision for additional findings, or may reverse or modify the decision if the substantial rights of the petitioners have been prejudiced....
[5] Minn.Stat. § 121A.47, subd. 13 (2004), provides:

The school board shall base its decision upon the recommendation of the hearing officer or school board member or committee and shall render its decision at a meeting held within five days after receiving the recommendation. The school board may provide the parties with the opportunity to present exceptions and comments to the hearing officer's recommendations provided that neither party presents any evidence not admitted at the hearing. The decision by the school board must be based on the record, must be in writing, and must state the controlling facts on which the decision is made in sufficient detail to apprise the parties and the commissioner of education of the basis and reason for the decision.
[6] The school board cites State v. Xiong, 638 N.W.2d 499 (Minn.App.2002), review denied (Minn. April 16, 2002) in support of its proposition that the commissioner did not have authority to review the matter. But this case is distinguishable from Xiong because the issue here is whether review is permitted after relators waived their right to a hearing. In contrast, the issue in Xiong was not whether review was permitted, but rather the standard to be applied after the probationer waived his right to a "contested hearing" on the matter. See id. (holding that probationer's waiver of a "contested hearing" was equivalent to a stipulation to the state's allegations in the violation report, reserving only the right of the probationer to argue mitigation).
[7] The record shows that prior to the May 14 meeting, Hodson received the principal's written recommendation that both S.K. and Z.K. be expelled for a period of one calendar year. Hodson also received the assistant principals' recommendations that S.K. be expelled for the remainder of the school year and that Z.K. be expelled for one year under probationary conditions. It is unclear from the record whether relators were notified of the principal and assistant principals' recommendations.
[8] The school board claims that relators waived the issue because they failed to raise it below. But again, the record reveals that the issue was properly raised below.