In the Matter of the EXPULSION OF N.Y.B., from Anoka–Hennepin Independent School District No. 11.

No. A07–1277.

Court of Appeals of Minnesota.

June 10, 2008.

Ann Marie Hanrahan, 3M Office of General Counsel; and Gail Chang–Bohr, Children's Law Center of Minnesota; and J. David Prince, William Mitchell College of Law, St. Paul, MN; and Stephen Lucke, Karen Pogonowski, Dorsey & Whitney, Minneapolis, MN, for relator N.Y.B.

Lori Swanson, Attorney General, Martha J. Casserly, St. Paul, MN, for respondent Department of Education.

Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn & Deans, Mendota Heights, MN, for respondent Independent School District No. 11.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and COLLINS, Judge.*

## OPINION

WRIGHT, Judge.

Relator challenges the school board's decision to expel her for one calendar year, arguing that (1) the school board's decision is arbitrary and capricious and unsupported by substantial evidence and (2) relator was deprived of procedural due process. We remand.

## FACTS

Before being expelled, relator N.Y.B. was a freshman at Coon Rapids High School (CRHS) in respondent Anoka–Hennepin Independent School District (the district). Sometime in late November or early December 2006, C.S., who also attended CRHS, made comments to other students about N.Y.B.'s racial heritage. During lunch in the school cafeteria on December 13, 2006, N.Y.B. confronted C.S. about rumors that she believed C.S. was spreading. A fight ensued, during which N.Y.B. broke a cafeteria tray over C.S.'s head. School

staff promptly broke up the fight. While being escorted to the main office by a school official, N.Y.B. turned and ran toward C.S., who was being escorted in the opposite direction. As a result, an assistant principal physically restrained N.Y.B. to prevent the resumption of the fight. Another assistant principal immediately suspended N.Y.B. for ten days, pending expulsion. And on December 19, 2006, the principal recommended to the school board that N.Y.B. be expelled for violating the district's physical-aggression policy.

In late January 2007, N.Y.B. and her attorney met with the principal and the district's general counsel to discuss the pending disciplinary action. As a result of this meeting, N.Y.B.'s attorney understood that, if N.Y.B. opted for an evidentiary hearing before an independent hearing officer, the school board "would consider the findings and conclusions of the hearing officer in making its decision" but that it was highly unlikely that N.Y.B. or her attorney would be permitted to comment on the evidence adduced. N.Y.B.'s counsel further understood that, if N.Y.B. waived an evidentiary hearing, N.Y.B. and her attorney would "have the opportunity to present [their] position to the School Board and to request [the school board's] consideration of that position in determining whether to expel [N.Y.B.] and the time period of any expulsion." Apparently based on this understanding, N.Y.B. waived her right to an evidentiary hearing.

On February 12, 2007, the school board met to decide whether to expel N.Y.B. and, if so, the length of the expulsion. If meeting minutes were kept, they were not included in the record. But it is undisputed that N.Y.B. read a prepared statement

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

apologizing for her "disturbance" and acknowledging that she made a poor choice by allowing her temper to get the best of her. N.Y.B. also apologized for any physical or emotional pain that she may have caused C.S. In addition, N.Y.B.'s attorney addressed the school board, urging it to consider various mitigating circumstances. After deliberation, the school board voted 5 to 1 to expel N.Y.B. until December 12, 2007. The school board explained its decision as follows:

The offense was: [N.Y.B.] assaulted another student and was insubordinate.

The grounds for expulsion are based on a determination by the Anoka–Hennepin School Board that the *Discipline Policy: Code of Student Conduct* has been violated, specifically:

"6. Violations against persons such as verbal and/or nonverbal intimidation/threats; ... assault; fighting...." This dismissal is consistent with Minnesota Statute 121A.45, Subd. 2, (enclosed) which establishes that a student may be dismissed for:

a. willful violation of any reasonable school board regulation. Such regulation must be clear and definite to provide notice to pupils that they must conform their conduct to its requirements;

b. willful conduct that significantly disrupts the rights of others to an education, or the ability of school personnel to perform their duties, or school sponsored extracurricular activities; or

c. willful conduct that endangers the pupil or other pupils, or surrounding persons, including school district employees, or property of the school.

The district also advised N.Y.B. of her right to appeal the school board's decision to the Commissioner of Education (the commissioner) under Minn.Stat. § 129A.49 (2006). N.Y.B. exercised that right.

On appeal, the commissioner determined that "expulsion is a reasonable disciplinary action for assaulting another student and insubordination toward School staff." But the commissioner concluded that the school board's written explanation was inadequate. The commissioner reasoned that, although the school board's decision "lists the general offense of assault and insubordination" and quotes the discipline policy, it failed to include the "controlling facts" relied on by the school board as required by Minn.Stat. § 121A.47, subd. 13 (2006). Specifically, the school board failed to state the facts on which it relied to expel N.Y.B. for one calendar year, "such as prior practice for similar incidents or whether the School Board considered the factors raised by [N.Y.B.]'s counsel at the School Board meeting." The commissioner, therefore, remanded the matter with instructions to the school board to amend its resolution to "provide a written decision that presents the controlling facts upon which [the expulsion decision] was made in sufficient detail to apprise" the parties and the commissioner of the basis and reason for expelling N.Y.B. for one calendar year.

On May 3, 2007, the school board convened an emergency meeting to comply with the commissioner's directions. The school board amended its original resolution expelling N.Y.B. to include the following language:

1. Based on the evidence presented, including the recommendation for expulsion from school administration, as well as the statements of [N.Y.B.] and her legal counsel at the February 12, 2007 meeting, the Board determined that [N.Y.B.]'s December 13, 2006 assault of another student by hitting her over the head with a lunch tray was a willful violation of paragraph III B.6 of the District Student Discipline Policy, Code of Student Conduct, which prohibits "vi-

olations against persons ... including ... verbal and/or non-verbal intimidation/threats ... assault, fighting...." Furthermore, after intervention by school staff and while [N.Y.B.] was being escorted to the office by an Assistant Principal, the Board determined that when [N.Y.B.] kicked off her shoes, broke away, and charged towards the other student, requiring [N.Y.B.] to be physically restrained by school officials, constituted a willful violation of paragraph III B.8 which prohibits disruptive acts "including disobedient, disruptive, and disrespectful behavior, defiance of authority, and insubordination." Further, pursuant to policy guidelines, when physical aggression requires restraint by staff to prevent harm to other students, the consequences may be more severe. (Secondary Handbook summary of policies p. 38–39).

2. [N.Y.B.]'s fighting constitutes a willful violation of reasonable School Board regulations and was incompatible with the school educational environment and the safety of the students and staff. Based on prior disciplinary actions by other students for similar violations of the District's Student Discipline Policy, the School Board believes that an expulsion of less than one calendar year would be inconsistent with its past practices in similar or less severe cases. Specifically, as of February 12, 2007, the Anoka–Hennepin School Board had expelled 22 students in the 2006–07 school year for engaging in more than one fight in their high school career, or who have committed a single assault (with or without a weapon), or engaged in a single fight or assault that involved physical restraint by a staff member. Of those students, twelve received an expulsion for one year; seven received an expulsion of one calendar year with a probationary return after three academic quarters; two received an expulsion of one calendar year with a probationary return after two academic quarters; and one received an expulsion of three academic quarters with a probationary return after one academic quarter (this last consequence involved a student engaging in her second fight, however, she made attempts to avoid the fight and escape the situation). From February 12, 2007 to May 3, 2007, the District has expelled an additional six students for fights: three students were expelled for one year and three students received an expulsion of one calendar year with a probationary return after three academic quarters. Based on the Board's review of these matters, the totality of the circumstances regarding [N.Y.B.] is at least as egregious as those incidents which led to one calendar year expulsions.

N.Y.B. subsequently appealed the postremand resolution, which the commissioner affirmed. This certiorari appeal followed.

## ISSUES

I. Did the school board adequately explain its decision to expel relator for one calendar year as required by the Pupil Fair Dismissal Act (PFDA)?

II. Did respondent deprive relator of due process?

## ANALYSIS

N.Y.B. challenges her expulsion from CRHS under the PFDA, Minn.Stat. §§ 121A.40–121A.56 (2006), which governs the expulsion of a public-school student.[1]

---

1. Under the PFDA, expulsion is a species of "dismissal," along with suspension and exclusion. Minn.Stat. § 121A.41, subd. 2.

A public-school student may appeal a school board's expulsion decision to the commissioner. Minn.Stat. § 121A.49. The commissioner's decision on appeal is subject to judicial review by writ of certiorari. Minn.Stat. § 121A.50 (citing sections of administrative procedure act governing certiorari review). Under Minn.Stat. § 14.69 (2006), we

> may affirm the decision of the agency or remand the case for further proceedings; or [we] may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
>
>> (a) in violation of constitutional provisions; or
>>
>> (b) in excess of the statutory authority or jurisdiction of the agency; or
>>
>> (c) made upon unlawful procedure; or
>>
>> (d) affected by other error of law; or
>>
>> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>>
>> (f) arbitrary or capricious.

■ Before addressing the parties' arguments on the merits, we clarify the operative standard of review. Judicial intervention in the public-school system requires restraint. *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216, 220 (Minn.App.1999), *review denied* (Minn. July 28, 1999). Therefore, we generally defer to a school board's judgment on matters of student discipline. *In re Expulsion of I.A.L.*, 674 N.W.2d 741, 747 (Minn.App.2004). We do not, however, afford the same level of deference to the commissioner's decision. Although in form we are reviewing the commissioner's decision, Minn.Stat. § 121A.50, in substance we are reviewing the school board's decision directly.

■ When an agency acts in a quasi-judicial capacity, we typically review its decision using the deferential substantial-evidence test. *Indep. Sch. Dist. No. 192 v. Minn. Dep't of Educ.*, 742 N.W.2d 713, 719 (Minn.App.2007), *review denied* (Minn. Mar. 18, 2008). This deference, however, assumes that the agency is performing quasi-judicial functions analogous to a court of original jurisdiction, such as "receiving and weighing evidence, making factual findings, and applying a prescribed standard to reach a conclusion." *Cf. id.* (describing quasi-judicial functions). By contrast, the commissioner affirms, reverses, or modifies the school board's decision after applying a standard of review to the record, or remands for additional fact-finding. Minn.Stat. § 121A.49. These are quasi-judicial functions equivalent to appellate review. *See generally* 5 C.J.S. *Appeal and Error* § 1013 (2007) (describing nature of appellate review).[2] Thus, although we afford the typical deference to the school board's decision, we owe no more deference to the commissioner's review of that decision than the Minnesota Supreme Court owes to our review of a district court's decision. *Cf. In re Hutchinson*, 440 N.W.2d 171, 175 (Minn.App.1989) (distinguishing high level of deference given to district court reviewing agency decision when district court "acts as a court of first

---

2. The statutory language is unmistakable. The parties to a PFDA appeal are referred to as "appellant" and "respondent," and the appellant initiates review by filing a "notice of appeal." Minn.Stat. § 121A.49. The ultimate act to be reviewed is the school board's "decision," not a "recommendation." *Compare id.* (appeal from school board's decision), *with* Minn.Stat. § 121A.47, subds. 12–13 (stating that school board's decision is to be based on hearing officer's recommendation). And the commissioner must adhere to a standard of review with respect to the school board's decision that is identical to the standard we use on writ of certiorari. *Compare* Minn.Stat. § 121A.49, *with* Minn.Stat. § 14.69.

impression" from de novo review conducted when district court is "itself acting as an appellate tribunal with respect to the agency decision"), *review denied* (Minn. Aug. 9, 1989).

This procedural nuance also circumscribes the record on which we may base our decision. The school board's decision "must be based on the record." Minn. Stat. § 121A.47, subd. 13. If the student exercises the right to an evidentiary hearing, the content of "the record" is clear; the factual basis for the school board's decision is limited to the evidence admitted at the hearing, which the school board is obligated to have recorded. *Id.*, subds. 7, 12–13. The record also encompasses the subsequent school board meeting at which the decision is rendered, including any commentary on the evidence. *Cf. Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 675–76 (Minn.1990) (holding in context of reviewing teacher-dismissal decisions that "record" consists of proceedings and actions of school board). If, however, the student waives the right to the evidentiary hearing without stipulating to the evidence in the record, the record comprises only the decision-making meeting, including anything presented for the board's consideration. *See* Minn.Stat. § 121A.47, subd. 13 (requiring school board's decision to be based on the "record"); *Dokmo*, 459 N.W.2d at 675–76 (including school board's proceedings in "record").[3]

When exercising quasi-appellate jurisdiction over a school board's decision, the commissioner is bound by the record of the proceedings before the school board.

Minn.Stat. § 121A.49. The legislature did not grant the commissioner jurisdiction to review facts presented in the parties' submissions on appeal unless they are supported by the record. *See id.* (requiring commissioner's decision, "based upon the record," to be made within 30 days after receiving "the entire record and the parties' written submission on appeal"); *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999) ("Whenever it is possible, no word, phrase, or sentence [in a statute] should be deemed superfluous, void, or insignificant."). Notwithstanding the reference to "Findings of Fact" in its decision, the commissioner is not authorized to make factual findings. *See Grinolds v. Indep. Sch. Dist. No. 597*, 346 N.W.2d 123, 127–28 (Minn.1984) (holding that district court, which was exercising appellate jurisdiction over school board's dismissal of superintendent, was not authorized to make factual findings).

The limited record before us does not include many of the "facts" the parties rely on in their briefs. For example, both parties inappropriately cite their own submissions on appeal to the commissioner to support factual propositions. *Cf. Tang v. I.N.S.*, 223 F.3d 713, 720 (8th Cir.2000) (holding that factual assertion in appellate brief, which cited factual assertion in brief submitted to agency, constituted counsel's argument, not evidence). Although the certiorari record includes any "papers filed" in the agency proceedings, Minn. R. Civ.App. P. 110.01, 115.04, subd. 1, the facts that we may consider on certiorari review are circumscribed by the scope of

---

**3.** The prohibition on parties introducing in their commentary "any evidence not admitted at the hearing," Minn.Stat. § 121A.47, subd. 13, does not apply when a student waives an evidentiary hearing. Otherwise, a legitimate expulsion process could be thwarted by waiving the hearing and consequently depriving the school board of the opportunity to present a factual basis for expulsion. We do not believe the legislature intended such an absurd result. Minn.Stat. § 645.17(1) (2006). Rather, we read this aspect of section 121A.47, subdivision 13, as prohibiting parties from introducing new evidence in closing argument to the school board.

our review, namely, whether the commissioner reached a legally correct outcome when applying the appropriate standard of review to the record before it, *see In re Block,* 727 N.W.2d 166, 176 (Minn.App. 2007) (stating that appellate court should confine itself to facts and circumstances before quasi-judicial body whose decision it is reviewing); *Buss v. Johnson,* 624 N.W.2d 781, 788 (Minn.App.2001) (limiting "record" for purpose of appellate review to "the record before the administrative body at the time it made its decision"). With these parameters in mind, we turn to the merits of N.Y.B.'s challenge to her expulsion.

### I.

■ N.Y.B. argues that the school board's written decision failed to comply with the PFDA's formal requirements. Specifically, she argues that, despite the commissioner's directions on remand, the school board failed to explain why it decided to expel her for one calendar year.

■ It is well established that a school board has plenary authority on matters of student discipline. *E.g., Expulsion of I.A.L.,* 674 N.W.2d at 747. Even so, a school board's expulsion decision, like the decision of any other agency, must be "based on objective criteria applied to the facts and circumstances of the record at hand." *See Carter v. Olmsted County Hous. & Redevelopment Auth.,* 574 N.W.2d 725, 729 (Minn.App.1998) (quotation omitted) (discussing limits on agency discretion). The PFDA grants a school board the authority to expel a student for up to one calendar year if that student

willfully (1) violates a reasonable school-board regulation, (2) engages in significantly disruptive conduct, or (3) engages in conduct that endangers the student or others. Minn.Stat. §§ 121A.41, subd. 5, 121A.45, subd. 2. To ensure the proper application of these criteria when expelling a student, a school board's decision must be in writing and "state the controlling facts on which the decision is made in sufficient detail to apprise the parties and the commissioner of education of the basis and reason for the decision." Minn.Stat. § 121A.47, subd. 13.

The district argues that the school board's decision, as amended on remand, complies with this requirement. The amended decision states that the school board expelled 22 students for fighting during the 2006–07 school year, with disciplinary consequences ranging from expulsion with probationary return after one academic quarter to expulsion for one calendar year.[4] "Based on [its] review of these matters," the school board concluded that "the totality of the circumstances regarding [N.Y.B.] is at least as egregious as those incidents which led to one calendar year expulsions." The district maintains that this explanation contains "sufficient detail" to satisfy section 121A.47, subdivision 13, because it apprises the parties and the commissioner of the rationale for the school board's decision, namely, that an expulsion of less than one calendar year would be inconsistent with the school board's past practice. We disagree.

■ An agency not only must identify the evidence on which it is relying, but also

4. In its amended decision, the school board also provided similar figures for expulsions postdating its February 12, 2007 decision to expel N.Y.B. Because these subsequent expulsions had not occurred when the school board decided to expel N.Y.B. for one calendar year, they do not constitute "controlling facts" within the meaning of the PFDA. *Cf. Interstate Power Co. v. Nobles County Bd. of Comm'rs,* 617 N.W.2d 566, 577 (Minn.2000) (stating that remand for findings must be limited to protect individual subject to decision from post hoc rationale).

it must "explain ... how that evidence connects rationally with the agency's choice of action." *Peterson v. Minn. Dep't of Labor & Indus.*, 591 N.W.2d 76, 79 (Minn.App.1999) (quotation omitted), *review denied* (Minn. May 18, 1999). The PFDA requires a school board to explain its decision in sufficient detail to facilitate meaningful appellate review. *See* Minn. Stat. §§ 121A.47, subd. 13 (requiring "sufficient detail to apprise ... the commissioner of education of the basis and reason for the decision"), 121A.49 (providing for appeal to commissioner of education), 121A.50 (providing for judicial review). Here, the decision states that (1) the school board expelled a quantity of students for fighting and (2) a subset of those students were expelled for one calendar year. But without a factual context, the number and lengths of prior expulsions tell us nothing about the relative seriousness of N.Y.B.'s conduct compared to that of the other students. The decision fails to explain why the school board concluded that N.Y.B.'s conduct "is at least as egregious as those incidents which led to one calendar year expulsions." Consequently, we are unable to determine whether the decision to expel N.Y.B. for one calendar year is the product of reasoned decision-making. *See Watab Twp. Citizen Alliance v. Benton County Bd. of Comm'rs*, 728 N.W.2d 82, 89 (Minn.App.2007) (discussing judicial review of administrative decision-making), *review denied* (Minn. May 15, 2007).

The decision also does not address any of the mitigating circumstances N.Y.B. raised. For example, she argued that, because the December 13 incident was her first offense, the presumptive disciplinary disposition was a ten-day suspension, not an expulsion for one calendar year.[5] Even if the school board rejected N.Y.B.'s argument, it was required to explain its reasons for doing so. The district responds that a "detailed analysis ... goes well beyond the requirements of [Minn.Stat. § 121A.47, subd. 13]." But the PFDA requires the school board to explain the reasons for both the expulsion and its length. *Cf.* Minn.Stat. § 121A.47, subd. 13 (requiring "sufficient detail to apprise *the parties* ... of the basis and reason for the [school board's] decision" (emphasis added)); *In re Expulsion of Z.K.*, 695 N.W.2d 656, 661 (Minn.App.2005) (recognizing that student has due-process right to challenge an expulsion regarded as unjust).

We acknowledge that the phrase "sufficient detail" defies precise, technical definition. But the practical standard it describes is akin to a mathematics teacher's admonition to students to "show your work." Indeed, the PFDA requires the school board to explain its decision for the same reason that a teacher requires students to record the steps taken to solve an equation. Without an explanation of the analysis performed, the school board's decision cannot be fairly evaluated.

We cannot affirm the school board's decision to expel N.Y.B. for one calendar year because the school board failed to explain its decision, as required by the PFDA. But we also cannot hold, as N.Y.B. urges, that the school board's decision was either arbitrary and capricious or unsupported by substantial record evidence. We, therefore, remand and direct the school board to explain its decision in "sufficient detail" to comply with Minn.Stat. § 121A.47, subd. 13. At a minimum, this

---

5. Although the district's physical-aggression policy prescribes a ten-day suspension as the presumptive disciplinary disposition for a first offense, the district also reserves the discretion to "apply more appropriate consequences when needed to provide for the safety of all students."

decision should include (1) the school board's basis for determining the relative egregiousness of N.Y.B.'s physical aggression, (2) the factual context of any incidents with which N.Y.B.'s conduct was compared, (3) an explanation of the school board's determination of how N.Y.B.'s conduct compares with the other incidents, and (4) an explanation of how the school board reached its conclusion about the relative seriousness of N.Y.B.'s conduct after considering the mitigating circumstances presented by N.Y.B.

## II.

N.Y.B. also challenges her expulsion on procedural-due-process grounds. Whether a given procedure violates due process presents a question of law, which we review de novo. *Expulsion of I.A.L.,* 674 N.W.2d at 744.

■ Education is a fundamental right in Minnesota, Minn. Const. art. XIII, § 1, as well as a property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). Thus, a student may not be expelled for misconduct without adherence to the minimum procedures required by due process. *Expulsion of I.A.L.,* 674 N.W.2d at 744; *see also* Minn.Stat. § 121A.42 (incorporating into PFDA guarantee of due process).

■ Having concluded that constitutional due-process protection applies, we next consider whether due process was afforded. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In an expulsion proceeding, the requisite level of due process is determined by (1) the private interest that will be affected by the official action, which is N.Y.B.'s right to a public education; (2) the risk that the procedures used erroneously deprived her of that interest; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the district's interests, including its educational function, and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See In re Expulsion of E.J.W.,* 632 N.W.2d 775, 780 (Minn.App.2001) (applying *Mathews v. Eldridge,* 424 U.S. 319, 341, 96 S.Ct. 893, 906, 47 L.Ed.2d 18 (1976), to expulsion procedure).

■ In support of her due-process claim, N.Y.B. relies on numerous technical violations of the PFDA. For example, the district failed to furnish her a list of low-cost legal resources. *See* Minn.Stat. § 121A.47, subd. 2(f)(1) (requiring district to furnish list of low-cost legal services). To obtain relief on appeal, however, a party generally must establish that the alleged error—even a constitutional error— resulted in prejudice. *In re Welfare of D.T.N.,* 508 N.W.2d 790, 797 (Minn.App. 1993), *review denied* (Minn. Jan. 14, 1994). And although we have recognized the importance of a district's obligation to provide students with a list of low-cost legal counsel, *Expulsion of Z.K.,* 695 N.W.2d at 663, N.Y.B. has not established that she was prejudiced by the district's lapse, since she obtained pro bono counsel on her own. Likewise, N.Y.B. has failed to establish prejudice resulting from the other violations of the PFDA. Indeed, N.Y.B. acknowledges that she cannot demonstrate that she was prejudiced. Rather, she argues that her expulsion was "so riddled with [procedural] flaws" that, when taken collectively, she was deprived of due process. In the absence of prejudice, however, N.Y.B. has not established a basis for relief.

■ N.Y.B. also argues that the district unfairly induced her to waive her right to an evidentiary hearing. Citing a

contemporaneous letter written by her counsel memorializing a meeting with the district's general counsel, N.Y.B. claims that the district's general counsel advised that N.Y.B.'s ability to address the school board was effectively contingent on her waiving the right to an evidentiary hearing. But we lack a factual basis in the record to evaluate this claim. Although N.Y.B. included the letter in her appendix, it does not appear to be part of the record on appeal. Without an evidentiary basis to evaluate N.Y.B.'s claim, it is not properly before us. *See Grundtner v. Univ. of Minn.,* 730 N.W.2d 323, 334 (Minn.App. 2007) (stating that appellant must provide record "sufficient to show the alleged errors").

## DECISION

The school board failed to explain why relator's conduct warranted an expulsion for one calendar year in sufficient detail to satisfy Minn.Stat. § 121A.47, subd. 13 (2006). Because we are unable to exercise meaningful appellate review of the expulsion decision without that explanation, we remand with instructions to the school board to supply such information as set forth in Section I, *supra.* However, in light of relator's failure to demonstrate prejudice, we reject relator's claim for relief on due-process grounds.

**Remanded.**